**UNITED STATES of America, Appellee,**

v.

**Jacob John GORDON,
Defendant–Appellant.**

**No. 80–1009.**

United States Court of Appeals,
First Circuit.

Argued Sept. 4, 1980.
Decided Oct. 24, 1980.

---

Stephen Gordon, Boston, Mass., by appointment of the Court, for defendant–appellant.

Robert B. Collings, First Asst. U. S. Atty., Chief, Crim. Div., Boston, Mass., with whom Edward F. Harrington, U. S. Atty., and Charles E. Chase, Asst. U. S. Atty., Boston, Mass., were on brief, for appellee.

Before COFFIN, Chief Judge, BOWNES, Circuit Judge, WYZANSKI, Senior District Judge.*

WYZANSKI, Senior District Judge:

The defendant appeals from his convictions on eleven counts for mail fraud in violation of 18 U.S.C. § 1341 and two counts for use of wire communications to defraud in violation of 18 U.S.C. § 1343. We affirm the convictions because we see no merit in any of his ten points.

■ 1. The defendant's two motions that the trial judge disqualify herself were on the grounds that in the instant case (1) the judge and the prosecutor colluded in setting the defendant's bail at $5,000 with surety and (2) the judge had ordered the defendant to submit to a psychiatric examination. Inasmuch as the alleged bias stemmed from what the judge learned from her participation in the instant case, and not from an extrajudicial source, the motions were properly denied. *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966).

■ 2. The defendant's so–called "motion for bill of particulars" failed to specify in what respects the indictment needs particularization. It is the essence of a motion for a bill of particulars that it specify the particulars in which the moving party asks to have the indictment clarified. Absent specification, the motion does not comply with Fed.R.Cr.P. 47 because it fails to "set forth the relief or order sought." Moreover, unless a court is informed as to what particulars are sought, it cannot give specific directions to the government as is contemplated by Fed.R.Cr.P. 7(f) which authorizes the court to "direct the filing of a bill of particulars." Nor is there any basis upon which a court may exercise its discretion. *Cf. United States v. Conway*, 415 F.2d 158,

161 (3rd Cir. 1969), cert. den. 397 U.S. 994, 90 S.Ct. 1131, 25 L.Ed.2d 401 (1970). See 8 Moore's Federal Practice ¶ 7.06. Because the motion failed to specify particulars sought, the trial judge correctly denied it.

■ 3. The defendant filed a list of 38 questions to be asked of the jurors on the *voir dire*. The trial judge declined to ask those questions, but relied on general questioning of the jurors as to whether they knew the parties or the attorneys or knew anything about the case which the judge outlined. The defendant did not then request the judge to ask any particular one of the 38 questions he had previously supplied, but he now claims that it was error of the judge to fail to ask the jury questions 1, 2, 11, 12, 21, 22 and 25 on his list. The proposed questions were substantially as follows: "would any of the jurors be prejudiced against the defendant because he is a decorated combat infantry veteran" or because he was a "certified Republican presidential candidate"; "what other cases have the jurors participated in," "how did the jurors find in these cases, guilty or not guilty"; "do any of the jurors have any type or kind of criminal record"; "are any of the jurors related to any persons employed by the government" and "are any jurors acquainted with any person who has any type or kind of interest in this case." Fed.R.Cr.P. 24 allows the trial court wide discretion as to the scope and conduct of *voir dire* examinations of jurors, including the determination of which questions prepared by the parties or their attorneys are proper. *Hamling v. United States*, 418 U.S. 87, 139, 94 S.Ct. 2887, 2918, 41 L.Ed.2d 590 (1974); *United States v. Desmarais*, 531 F.2d 632, 634, note 4 (1st Cir. 1976). See 8A Moore's Federal Practice, ¶ 24.03. None of the questions proposed by the defendant in this case had "constitutional dimensions." *Cf. Ristaino v. Ross*, 424 U.S. 589, 597, 96 S.Ct. 1017, 1021, 47 L.Ed.2d 258 (1976). Most of the proposed questions were frivolous or improper. The question about acquaintance with persons having an interest

---

* Of the District of Massachusetts, sitting by designation.

in the case had already been mooted by the jurors' indication that they knew nothing about the case. We hold that the trial judge did not abuse her discretion in not putting to the potential jurors any of the proposed questions. *United States v. Desmarais, supra.*

4. The defendant on August 7, 1979 filed a "motion to dismiss [the indictment] because of double jeopardy." Without annexing any affidavit or other document, the motion merely alleged that "these proceedings are the same identical charges brought against him in the U.S. District Court in Charlotte, North Carolina on or about January 1978. That to bring charges in the United States District Court in Boston which are an exact duplicate of charges made in the U.S. District Court in Charlotte, North Carolina constitutes double jeopardy. Wherefore Republican Presidential Candidate J. John Gordon demands thay [sic!] the proceedings be dismissed, that the allegations made in these proceedings were brought to trial and finding was made in the U.S. District Court in Charlotte, North Carolina."

December 5, 1979 in the case at bar the district judge, without a hearing, dismissed the motion. So far as we are informed, the record does not contain a copy of any indictment, order, judgment, or other document from the District Court in North Carolina. However, in this court the government's brief supplies us with a copy of the North Carolina indictment, the accuracy of which the defendant does not dispute. The defendant now contends that he was entitled to a hearing by the judge on his August 7, 1979 motion, and that if he had been heard he would have been entitled to have had dismissed the entire fifteen–count indictment by the grand jury for the District of Massachusetts.

There is no doubt that the defendant was entitled to raise the defense of double jeopardy by a motion. See Fed.R.Cr.P. 12(a) and (b); Notes of Advisory Committee on Rules, Note to Rule 12 Subdivision (b)(1) and (2), par. 3; C. Wright, Federal Practice and Procedure, Criminal, vol. 1 § 193 at p.

409. But the defendant was not entitled to have an evidentiary hearing on such a motion. *United States v. Cohen,* 489 F.2d 945, 951–952 (2nd Cir. 1973). The district judge was free to dispose of the motion on the basis of affidavits, *ibid.,* or by taking judicial notice of the proceedings which gave rise to the defense of double jeopardy, inasmuch as those proceedings are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed.R.Ev. 201(b)(2).

One of the sources of which it seems that the district judge took judicial notice was the text of the undisputed indictment returned by the grand jury for the United States District Court for the Western District of North Carolina. The text of that undisputed indictment incontrovertibly proves that the North Carolina indictment and the Massachusetts indictment do not make identical charges. There are obvious differences in the time periods of the alleged schemes, and in the persons alleged to have been defrauded. Inasmuch as the sole ground upon which on August 7, 1979 the defendant moved for a dismissal of the Massachusetts indictment was that it was an "exact duplicate" of the North Carolina indictment, the district judge was entitled to treat the motion as transparently frivolous and to deny it without a hearing.

Furthermore, the North Carolina indictment alleged that all the offenses covered by it were committed on or before October 12, 1977. Each of the counts 7, 8, 10, 11, 13, 14, and 15 of the Massachusetts indictment charges only an offense committed *after* October 12, 1977. Therefore, there was no basis for finding that the defendant had a valid claim that he was placed in double jeopardy by any of those 7 counts. *United States v. Leong,* 536 F.2d 993, 997 (2nd Cir. 1976). See *Riadon v. United States,* 274 F.2d 304, 306 (6th Cir. 1960). Inasmuch as the district court imposed with respect to each of those 7 counts and each of the 6 counts which did refer to offenses committed before October 12, 1977 concurrent sentences of two years, it is immaterial whether the defendant had with respect to

those 6 counts a valid defense of double jeopardy, so long as he did not have a valid defense of double jeopardy with respect to any of the other 7 counts. Where concurrent sentences are imposed it is not necessary to consider the validity of the conviction on each count, if the conviction on any one count is valid. *Hirabayashi v. United States*, 320 U.S. 81, 85, 63 S.Ct. 1375, 1378, 87 L.Ed. 1774 (1943); *Pinkerton v. United States*, 328 U.S. 640, 641–642 note 1, 66 S.Ct. 1180, 1181 note 1, 90 L.Ed. 1489 (1946). We discern no concrete prejudice to the defendant as a consequence of the challenged counts, either directly in this case or collaterally in possible future proceedings, and the defendant suggests none. *United States v. Ramos Algarin*, 584 F.2d 562, 568 (1st Cir. 1978). In short, the defendant's double jeopardy contention is without merit.

■ 5. The defendant contends that he was prejudiced by the judge's admission, over his objection, of exhibits that were not properly authenticated, of copies rather than original documents, and of hearsay testimony. Having examined each of the objections, we see no occasion to comment on any of them except those as to authenticity—for it is clear to us that even if the rulings on the other objections were not sound they were not prejudicial to the defendant, more particularly since, as we have just observed, if any one of the counts of the indictment has been proved the defendant is not entitled to a reversal of the judgment.

The thrust of the defendant's authenticity argument is that there is no direct evidence that he signed or authorized the sending of any of the documents which purport to come from him. To this the government answers that the appearance, contents, substance, internal patterns and like characteristics of the documents purporting to have been authorized by the defendant, taken in connection with the circumstances of this case support a finding that the documents were so authorized, and that therefore the documents were appropriately admitted under Fed.R.Ev. 901(a) and (b)(4).[1] We agree with the government for the following reasons.

The evidence shows that the questioned documents are part of an interlocking pattern followed with respect to each of a score of alleged victims of a single scheme. They are parallel documents which on their face purported to come from J. John Gordon, the President and Senior Counsel of the International Bank of Commerce, with a residential address at 8 Creswell Road, Worcester and a telephone numbered 617–754–5000. The defendant had a residence at that address and a telephone with that number. Some of the questioned documents were mailed from New Hampshire at a time when he was there; others were mailed from Massachusetts when he was there. Some of the addresses replied by sending to the 8 Creswell Road address checks which were deposited in the account of the defendant's wife and were used for his expenses. Most significantly, at least 7 of the addressees sent to the 8 Creswell Road address promissory notes or loan applications in reply to letters which purported to come from defendant. The defendant *qua* party kept these replies and used them *qua* lawyer to cross–examine the 7 addressees when they took the stand as witnesses, and then introduced the replies as his exhibits. It is reasonable to infer that the defendant would not have retained these exhibits if he had not authorized the letters to which they replied. Moreover, all the questioned letters purporting to come from the

---

1. Fed.R.Ev. 901(a) and (b)(4) provide:

   (a) General provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

   (b) Illustrations. By way of illustration only, and not by way of limitation, the fol-

lowing are examples of authentication or identification conforming with the requirements of this rule:

   .      .      .      .

   (4) Distinctive characteristics and the like. Appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances.

defendant whether received by the seven whose replies the defendant introduced in evidence or received by others of the 22 witnesses who testified are *ejusdem generis* : they are on the same stationery, refer to the same type of transaction, and otherwise indicate a common authorship. The district judge had substantial evidence to support a finding that the defendant authorized all the exhibits which on their face purport to come from him and which in any way relate to the scheme alleged in the indictment.

6. The defendant contends that the district court erred in denying his motion for a directed verdict at the close of the government's case. The essence of this contention is that without the documents purporting to have been "authorized" by the defendant there was not sufficient evidence to submit the case to the jury, and that there was no adequate authentication of those documents. Inasmuch as in point 5 *supra* we have just held that the documents were properly authenticated, the premise of the defendant's motion is unsound, and the motion was properly denied.

■ 7. The defendant's brief attacks the court's instruction on reasonable doubt. The district court charged that:

"Proof beyond a reasonable doubt is proof of such convincing character that you would be willing to act on it in the most important decisions that you have to make in your own lives and for yourselves."

The defendant's sole objection to that instruction was that it did not state that the proof must be "to a moral certainty." In refusing to give the "moral certainty" instruction, the district court acted in conformity with our views. *United States v. DeVincent*, 632 F.2d 147 (1st Cir. 1980); *United States v. Ariza–Ibarra*, 605 F.2d 1216, 1228 (1st Cir. 1979). No exception was taken to the trial judge's instruction that the "proof" must be such "that you would be willing to act upon it." To be sure, "this section of the charge should have been in terms of the kind of doubt which would make a person hesitate to act", see

*Holland v. United States*, 348 U.S. 121, 140, 75 S.Ct. 127, 137, 99 L.Ed. 150 (1954), rather than the kind of proof on which a juror would be willing to act, *United States v. Robinson*, 546 F.2d 309, 313–314 (9th Cir. 1976), cert. den. 430 U.S. 918, 97 S.Ct. 1333, 51 L.Ed.2d 596 (1977). But this does not constitute plain error. *United States v. Richardson*, 504 F.2d 357, 361 (5th Cir. 1974).

■ 8. The defendant contends that the trial judge committed error when, after conducting a *voir dire* of defendant's proposed witness, Benjamin Bush, she, on the government's motion, refused to permit him to take the stand.

The district judge allowed defendant and his stand–by counsel ample opportunity to make an offer of proof. After defendant and his counsel had made a rambling, incoherent proffer which occupies 30 pages of the transcript, the judge found that Bush proposed to testify merely with respect to matters two years after the matter at issue, and with regard to a transaction totally different in context from that covered in the trial; and she, therefore, excluded Bush's testimony. Our own reading of these 30 pages and of the exhibits with respect to which the defendant wished to have Bush testify supports this finding. The defendant's brief in this court does not challenge the finding. Nor does the brief point to any part of the defendant's offer of proof which is relevant to this case. It follows that the trial judge made no error in excluding Bush's testimony. "Evidence which is not relevant is not admissible." Fed.R.Ev. 402.

■ 9. The defendant contends that the district judge erred in denying his request for the issuance of subpoenas pursuant to Fed.Cr.P. 17(b) which reads as follows:

"(b) *Defendants Unable to Pay.* The court shall order at any time that a subpoena be issued for service on a named witness upon an *ex parte* application of a defendant upon a satisfactory showing that the defendant is financially unable to pay the fees of the witness and that

the presence of the witness is necessary to an adequate defense. If the court orders the subpoena to be issued the costs incurred by the process and the fees of the witness so subpoenaed shall be paid in the same manner in which similar costs and fees are paid in case of a witness subpoenaed in behalf of the government."

On December 10, 1979, the first day of trial, the defendant filed a motion for subpoenas for President Carter, Attorney General Civiletti, former Attorney General Bell, David Rockefeller, Henry Kissinger and over 200 other persons. On the same day the district court denied the motion.

On December 17, 1979, the sixth day of the trial, defendant filed a "motion for witness costs." The motion does not name the proposed witnesses, but alleges that they reside in Australia and other foreign countries, and prays for an order that the government pay travel expenses, witness fees and per diem allowances for the aforesaid witnesses. Defendant served the motion on the Attorney General.

On December 18, the defendant apparently gave to the district judge an unnotarized statement of his alleged poverty. Later that day the trial judge in open court stated that Fed.R.Cr.P. 17 was the only source of authority for her to direct the payment of witness fees, and that the unnotarized statement did not constitute a satisfactory affidavit or showing that the "defendant is financially unable to pay the fees."

On December 19, in open court the district court stated that she had before her a "motion ... to issue subpoenas." This seems to refer to the December 17 motion summarized above. The defendant's counsel stated that the motion was to cover 28 witnesses (Tr. 8–21), and he disclosed that they were all from Australia, Africa and other foreign countries. It seems that the 28 names were on a list handed by defendant's counsel to the court, and that the list was not introduced as an exhibit. The judge held that under the law she had no power to order the government to pay the expenses of foreign witnesses to travel to the United States. (Tr. 8–22). Then it

seems that the defendant's counsel asked to have subpoenas for five or six persons who apparently were in the United States. The judge asked for a showing that the defendant's request came within Fed.R.Cr.P. 17. She proposed to conduct the hearing in open court. *Ibid.* Defendant's counsel objected and demanded an *ex parte* hearing. Orally he then asked, pursuant to Rule 17, for a subpoena for a Mr. Archie Clayton of the Texas Banking Commission and a subpoena of a "Mr. Novinger" of the Pennsylvania Banking Commission. Defendant stated that each of these witnesses would testify concerning setting up a bank in his state.

Then the trial judge began to question the defendant as to his financial condition. Defendant's counsel asked for an *ex parte* hearing; but the judge ruled that the questioning concerning financial ability should be done in open court. In the absence of the jury, the court put the defendant on the stand and examined him as to his financial capacity. The judge found that the defendant could not pay the expenses of witnesses. Some hours later the trial judge declined to issue subpoenas for Clayton and Novinger because she did "not believe that they were necessary to an adequate defense" and she repeated her refusal to issue subpoenas for the foreign witnesses. *Ibid.* Later she denied a subpoena for Daniel Driscoll whom the defendant said would testify that the telephone company had made an agreement with him that none of his records would be available to anyone.

On the basis of our detailed account of the defendant's request for subpoenas we conclude that he never made an appropriate application for subpoenas under Fed.R.Cr.P. 17. The written motion which he served upon the Attorney–General did not seek an *ex parte* hearing but the exact opposite. The first oral motion sought an order to subpoena and pay the expenses of persons who were not within the United States, and were not citizens or residents of the United States. Rule 17 does not provide for such an order. It is limited to proposed witnesses whom the court has power to summon and for whose travel expenses there is stat-

utory authority. A person who at the time of the Rule 17 application is not a citizen or resident of the United States and is not within the United States does not come within that limited category. The later oral application for subpoenas to be issued to two banking commissioners and to the telephone company employee were appropriately denied because transparently[2] the testimony sought to be elicited was not relevant, and hence was "not necessary to an adequate defense." Fed.R.Cr.P. 17(b).

We, therefore, reject the defendant's contention that he was erroneously denied applications to have had subpoenas issued and witnesses compensated pursuant to Rule 17(b).

■ 10. Defendant's final contention is that the district court should have declared a mistrial because of the prosecutor's improper remark in his closing argument.

These are the circumstances. The indictment was in 15 counts of which the first charged a scheme to defraud investors of a total of $30,000. The government was prepared to offer 40 witnesses whose losses totalled $30,000. But at the defendant's counsel's request, the trial judge stopped the government after 22 witnesses, when the total frauds shown amounted to less than $30,000. The defendant's counsel argued to the jury that the total of $30,000 was not proved. In reply the prosecutor said "If Mr. Butters [the defendant's counsel] wants us to list more mailings, more items, well, I suppose that's something that can be done next time round." At once the judge struck the statement and cautioned the jury that "there is no evidence whatsoever of anything except what was produced in this courtroom. You shall disregard the statement."

2. We agree with the defendant that if an appropriate application under Rule 17(b) is made the district court should explore in an *ex parte* hearing, and not in open court, the issue as to what is the nature of the testimony which the proffered witnesses will give. *Holden v. United States*, 393 F.2d 276 (1st Cir. 1968). However, when a defendant is denied a Rule 17(b) *ex parte* hearing his remedy is to remain silent,

The quoted remark of the prosecutor would ordinarily have been improper. But it was invited by the improper remark of defendant's counsel. "Many cases recognize that the prosecutor may go beyond the normal bounds of proper argument to meet an issue introduced by defense counsel's argument." *United States v. DeLoach*, 504 F.2d 185, 191, note 12 (D.C.Cir. 1974). We are persuaded beyond a reasonable doubt that if the remark was improper it was not prejudicial, especially in the light of the immediate action of the judge in striking it and cautioning the jury.

*Affirmed.*

and if convicted to show that the proposed testimony would have been material, *ibid*, p. 278, or perhaps to apply for a writ of mandamus. Here the defendant in making his application for subpoenas for the two bank commissioners and Driscoll plainly showed that their testimony would not be material, so he was not prejudiced by the trial judge's exploration in open court.