UNITED STATES of America,
Plaintiff-Appellee,

v.

Joseph PLOTKE, Edwin Ring Hodge, aka Jabbo Hodge, Dennis James Barfield and Burtis Holmes, Defendants-Appellants.

No. 81–5863.

United States Court of Appeals,
Eleventh Circuit.

Feb. 27, 1984.

Robert J. Vossler, Federal Public Defender, Tallahassee, Fla., for Plotke.

Leo C. Jones, Panama City, Fla., for Hodge.

Roger D. Patterson, Panama City, Fla., for Barfield.

Michael T. Simpson, Asst. U.S. Atty., Tallahassee, Fla., for plaintiff-appellee.

Thomas S. Keith, Asst. Federal Public Defender, Pensacola, Fla., for Holmes.

Before TJOFLAT and HILL, Circuit Judges, and SIMPSON, Senior Circuit Judge.

SIMPSON, Senior Circuit Judge:

A grand jury for the Northern District of Florida returned an indictment on April 2, 1981, against three brothers, Dennis James Barfield, Michael Judson "Tony" Barfield and Ephrom Cornelius Barfield; their brothers-in-law, Edwin Ring "Jabbo" Hodge and Joseph Plotke; Dennis Barfield's father-in-law, Burtis Holmes, and Jerry Michael Baker, an insurance adjuster who was unrelated to any co-defendant, charging them with conspiracy to commit mail fraud in violation of 18 U.S.C. §§ 2, 371 and 1341. In addition, each of four substantive counts charged Dennis and one

or more of his co-defendant relatives with using the mails to obtain money by fraudulent means in violation of 18 U.S.C. § 1341. A sixth count, charging Dennis with a violation of 18 U.S.C. § 1001 was dismissed before trial.

Baker pleaded guilty to conspiracy and testified for the government. The district judge granted Ephrom a pre-verdict judgment of acquittal. The jury acquitted Tony on all counts but found Dennis, Plotke, Hodge and Holmes each guilty of conspiracy and the substantive counts with which he was charged. Each defendant received equal and concurrent terms of imprisonment for conspiracy and for every substantive count under which he was convicted. Plotke, Holmes and Hodge received three year sentences. Dennis received five year sentences and an additional ten thousand dollar fine for conspiracy.

### Sufficiency of Evidence

■ Each appellant challenges the sufficiency of the evidence to prove conspiracy and the substantive counts of which he was convicted. For the reasons stated below, we find sufficient evidence to sustain appellants' convictions for the substantive crimes charged in counts two, three and four. We decline to review Dennis' mail fraud conviction under count five and the conspiracy convictions of Plotke, Holmes and Hodge under the concurrent sentence doctrine. See, *United States v. Johnson,* 700 F.2d 699, 701 (11th Cir.1983).

This court must view the evidence in the light most favorable to the government and from that evidence draw all reasonable inferences and resolve all credibility choices in favor of the verdict. *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Morano,* 697 F.2d 923, 927 (11th Cir.1983). A conviction will be reversed for lack of supporting evidence only where the court concludes that a reasonably-minded trier of fact must have entertained a reasonable doubt about the guilt of the appellant. *United States v. McCrary,* 699 F.2d 1308, 1311–12 (11th Cir. 1983).

■ A conviction for mail fraud requires proof of three elements: (1) defendant knowingly participated in a scheme to defraud; (2) the mails were used to implement the scheme, and (3) the use of the mails was "caused" by someone connected with the scheme. *United States v. O'Malley,* 707 F.2d 1240, 1246 (11th Cir.1983). When viewed by the *Glasser* standard, the evidence shows that homeowners Plotke, Holmes and Hodge participated with Dennis in a scheme to defraud the insurers of their respective homes by purchasing insurance in an amount greater than the value of the dwelling and its contents, procuring the destruction of the premises by fire, submitting excessive claims, falsely representing that the fire was of innocent origin and using or attempting to use the services of Baker, the dishonest adjuster who, at Dennis' request, selected a target insurer from whom Plotke and Holmes would purchase their policy, submitted falsified claims documents including padded claims for lost personal property to the Plotke and Holmes insurers and did everything within his power to prevent the insurer from investigating the origin of the Plotke, Holmes and Hodge fires.

■ All defendants except Holmes were directly identified by government witnesses as having participated in one or more stages of each fraud. Though no witness could directly identify Holmes, as the man who had purchased insurance and later cashed a forty-six thousand dollar insurance company settlement draft, there is no question that Holmes was the home owner. A bank official who guaranteed payment of the settlement draft testified that he had no independent memory of the transactions; however he would not have given his guaranty unless he had ascertained that the payee-endorser who cashed the draft and opened the account was, in fact, Burtis Holmes. The claim was processed through a Lynn Haven, Florida, post office box. A postal employee testified that a man had used a Florida driver's license bearing a picture, description and the name, "Burtis Holmes", as proof of his identity when he rented the box. Holmes admitted to an agent of the

Federal Bureau of Investigation that he had received forty thousand dollars from the insurance company after the fire. This circumstantial evidence is sufficient to show that defendant Holmes was the same man who purchased the over-valued policy from the target insurer Baker suggested to Dennis.

■ The indictment alleges and the evidence shows a use of the mails "caused" by someone connected with each of the fraudulent schemes. Though Baker placed into circulation the mail alleged in counts two and four, his co-defendants Dennis, Plotke and Holmes were responsible for his acts. *United States v. Johnson,* 700 F.2d at 701. The use of the mails was proven as to count three by a letter mailed from the victim insurer to Hodge acknowledging partial coverage for a claim he had made by telephone. The letter was a foreseeable consequence of the claim and therefore "caused" by Dennis who helped set the fire and by Hodge who soaked the building in inflammables and submitted the claim. *Pereira v. United States,* 347 U.S. 1, 8–9, 74 S.Ct. 358, 362–363, 98 L.Ed. 435 (1954); *United States v. Martino,* 648 F.2d 367 (5th Cir.1981), *cert. denied,* 456 U.S. 943 & 949, 102 S.Ct. 2006 & 2020, 72 L.Ed.2d 465 (1982).

■ Criminal conspiracy consists of an agreement between two or more persons to commit a crime and the commission of an overt act in furtherance of the agreement by a member of the conspiracy. *United States v. Caicedo-Asprilla,* 632 F.2d 1161, 1166 (5th Cir.), *cert. denied,* 450 U.S. 1000, 101 S.Ct. 1707, 68 L.Ed.2d 201 (1981). The evidence shows that Dennis and Baker agreed to participate in each of the four frauds. Dennis paid Baker for his services on two claims. He admitted to Forrest that he set the Hodge fire and that he was responsible for a fire at Ephrom's house which damaged a mobile home Forrest owned. He attempted to get Forrest to buy, insure and burn a service station as a contribution to the conspiracy and bragged of his success in all four frauds alleged in the indictment in order to convince Forrest that he too could profit from insurance fraud. On this strong showing, any reasonable trier of fact would be compelled to find him guilty of all elements of conspiracy.

## Limitations

■ Plotke and Dennis assert that the prosecution of count two was barred by a five-year statute of limitations, 18 U.S.C. § 3282. The indictment alleges that Baker mailed affidavits in proof of claim to Aetna on April 5, 1976. The evidence shows that he mailed the forms on that day to complete normal claims procedures and thereby allay suspicion on the part of the insurer. The April 2, 1981 indictment was filed three days before the limitation period expired. *United States v. Georgalis,* 631 F.2d 1199 (5th Cir.1980).

## Misjoinder under Rule 8(b), F.R.Crim.P.

■ Hodge argues that defendants were improperly joined because the indictment fails to allege and the evidence fails to prove that all defendants participated in the "same act or transaction or in the same series of acts or transactions," as required by Rule 8(b).

Hodge interprets the indictment as pleading four separate conspiracies, joined solely by the common participation of Dennis. His interpretation is erroneous. Though the conspiracy count charges nineteen overt acts and no defendant is charged with the commission of all overt acts or with participation in all of the frauds alleged in furtherance of the conspiracy, it alleges that the defendants formed a single agreement to commit five frauds. There is no misjoinder. The scope and nature of the agreement in the indictment are determined by looking at the whole rather than dismembering it into its parts. *United States v. Cole,* 704 F.2d 554 (11th Cir.1983). The allegations of a conspiracy in this case satisfied the requirements of Rule 8(b). *United States v. Kopituk,* 690 F.2d 1289 (11th Cir. 1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 2089, 2090, 3542, 77 L.Ed.2d 300 (1983); *United States v. Kabbaby,* 672 F.2d 857, 860–61 (11th Cir.1982).

Nor do we find any merit in an alternative argument that the government's evidence was at fatal variance to allegations of a single conspiracy. The jury was properly instructed that they could not convict the defendants of any conspiracy other than the one alleged in the indictment. In reviewing allegations of fatal variance, we must review the sufficiency of the evidence to sustain the jury's implicit finding of fact that there was but one conspiracy. *United States v. Lee*, 695 F.2d 515, 518–19 (11th Cir.), cert. denied, —— U.S. ——, 104 S.Ct. 130, 78 L.Ed.2d 125 (1983).

The factors which distinguish a single conspiracy to commit multiple crimes from several conspiracies are the existence of a common goal, the nature of the scheme and an overlapping of participants in the various dealings. *Id.* at 518. An agreement constitutes a single conspiracy if it contemplates a single result that will not continue without the continuous cooperation of the conspirators to keep it up. *United States v. Hess*, 691 F.2d 984, 988 (11th Cir.1982).

The government's theory was that the object of the conspiracy was a continual increase in the wealth of the extended Barfield family and those who assisted them, by defrauding insurance companies. The evidence showed that defendants shared their insurance settlements with each other by loan, gift, sale and bribe. The very nature of this conspiracy required personnel changes in order for it to continue. The wealth of the family could not increase unless additional properties were burned and claims were filed by claimants whose history of claims would not be subject to the scrutiny of suspicious insurance investigators. Nevertheless there was significant overlap between the participants in the various frauds. Dennis and Baker were involved in every claim. Baker's lack of success in two claims is irrelevant to proof of his participation. *United States v. Cuni*, 689 F.2d 1353 (11th Cir.1982).

Finally, there was striking similarity between the fires which destroyed the insured risks. All fires began at night while the inhabitants of the respective dwellings were absent. The fires all occurred in a forty-four day period between six and eighteen days from the date the owner insured the property for an amount in excess of its value, and each house was owned and insured by a close relative of Dennis Barfield. Viewing the evidence of *nexus* by the *Glasser* standard, we are unable to conclude that a reasonable trier of fact would necessarily entertain a reasonable doubt whether all frauds were perpetrated pursuant to a single agreement. Therefore we find no fatal variance.

### Admission of Extrinsic Offenses

The appellants allege error in allowing the government to refer to three incidents which are not alleged in the indictment and which they characterize as evidence of extrinsic offenses. Two of these incidents of which they complain, an agreement between Dennis and Baker to defraud the insurer of a mobile home and an attempt by Dennis to get Forrest to buy and insure a building which would be burned for profit, were extricably intertwined with the evidence introduced to prove the charges of the indictment and were relevant evidence of the scope, duration and purpose of the conspiracy. We find no error. *United States v. McCrary*, 699 F.2d at 1311; *United States v. Bates*, 600 F.2d 505, 509 (5th Cir.1979). Appellant's additional argument that the evidence should have been excluded as more prejudicial than probative is equally meritless. Exclusion of relevant evidence pursuant to Rule 403 is an extraordinary remedy to be used sparingly where the danger of unfair prejudice substantially outweighs the probative value. *United States v. Thevis*, 665 F.2d 616, 633–34 (5th Cir.), cert. denied, 456 U.S. 1008, 102 S.Ct. 2300, 73 L.Ed.2d 1303 (1982). In this case we think the probative value clearly outweighed the slight chance of prejudice. *Id.* See also, *Benton v. United States*, 637 F.2d 1052 (5th Cir.1981).

The third incident occurred in the cross-examination of Hodge. His attorney asked him "Have you ever had anything at all to do with the burning of your house or anybody else's house". Hodge replied, "No sir, I did not". On cross examination, the government asked him if he had been scarred in a fire at the home of "Dink" Walsh, on April 2, 1976. Hodge admitted to having scars but explained that he had been burned by an exploding aerosol can while he was burning garbage near Forrest's trailer. On redirect examination, he displayed what he described as "a little old scar on my shoulder".

The government's inquiry was a permissible attempt to impeach the specific denial of involvement in any houseburning.

> It is proper to admit evidence of any acts or circumstances which are inconsistent with the relevant testimony of the witness. Any evidence, otherwise competent, which in any respect tends to contradict the witness as to a material fact, is admissible for this purpose. The determination of what is admissible on rebuttal is primarily for the discretion of the trial courts, and the appellate courts will not reverse in the absence of an abuse of discretion.

*United States v. Halperin,* 441 F.2d 612, 617 (5th Cir.1971). See also, *United States v. Opager,* 589 F.2d 799, 802 (5th Cir.1979).

We find no abuse of discretion. Further, we are not convinced that Hodge was in any way prejudiced by the question. He gave an innocent and plausible explanation which the government could not contradict and which was not subject to a secondary level of impeachment. *United States v. Barnes,* 622 F.2d 107 (5th Cir. 1980); *United States v. DeLillo,* 620 F.2d 939 (2nd Cir.), *cert. denied,* 449 U.S. 835, 101 S.Ct. 108, 66 L.Ed.2d 41 (1980).

### Refusal to Order Severance Pursuant To Rule 14, Fed.R.Crim.P.

Appellants allege that they were prejudiced by denial of their repeated motions for severance because the jury could not keep separate the evidence as to each defendant. The refusal to grant separate trials is reviewable only for an abuse of discretion. A refusal to sever will be reversed only where the defendant can show compelling prejudice. *United States v. Crawford,* 581 F.2d 489 (5th Cir.1978); *United States v. Kopituk,* 690 F.2d at 1314–15. The appellants identify their areas of concern as Dennis' and Hodge's involvement in offenses extrinsic to the indictment, discussions which Dennis and Hodge respectively had with Forrest concerning the origin of the Hodge fire and proposed distribution of the proceeds and co-defendants' statements outside the scope of the conspiracy, otherwise unidentified.

Our previous discussion of the so-called "extrinsic evidence" issues predetermines our rejection of appellants' arguments that they were prejudiced by "spillover" of coconspirator's statements. The trial judge heard a full day of independent evidence. He correctly applied the standards set forth in Fed.R.Evid. 801(d)(2), *United States v. James,* 590 F.2d 575 (5th Cir., en banc), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979) and *United States v. Beechum,* 582 F.2d 898 (5th Cir. 1978, en banc), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979) in ruling Dennis' statements to Baker and Forrest admissible against all indicted co-conspirators. Nor do we find any possibility of prejudice in the cross-examination of Hodge. No other defendant was even impliedly mentioned. Therefore, there could be no prejudice to co-defendants from questions which were not prejudicial to the defendant witness.

Appellants have failed to identify the other coconspirator's statements of which they complain. We are therefore limited to searching the record for plain error and we find none. Fed.R.Cr.P. 52(b). Appellants did argue at the James hearing that statements Dennis and Hodge made to Forrest concerning the Hodge fire and claim were inadmissible as idle chatter. To the contrary, Forrest, though unindicted, was a conspirator who knowingly stored

Hodge's firearms in anticipation of the fire and who was requested to give false statements corroborating Hodge's claims for destroyed furnishings. It was in the interest of the conspiracy to keep him advised of its current status. Therefore, the conversations were admissible against all conspirators. *United States v. Goodman,* 605 F.2d 870, 878 (5th Cir.1979).

■ Finally, we note that the acquittal of "Tony" Barfield belies appellants' assertions that the jury could not keep the evidence separate as to each defendant. Accordingly, we find no abuse of discretion. *United States v. Phillips,* 664 F.2d 971, 1017 (5th Cir. Unit B, 1981), *cert. denied,* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 and 459 U.S. 906, 103 S.Ct. 208, 74 L.Ed.2d 166 (1982).

### Limitation of Cross-Examination

On the first morning of the *James* hearing, Forrest attempted to identify each conspirator. He was unable to identify Holmes. However, after a midday recess he returned to make a positive identification. Forrest denied receiving any description from anyone but explained that he was now able to make the identification as the result of further observation and reflection. The man he had known as Holmes had a mustache and had always worn a cap. He had been confused by the now clean-shaven and bare-headed appearance of the defendant Holmes but the intervening time had allowed him to see through the discrepancy. He admitted that he had been visited during the noon recess by family members who had been observing the trial but denied having discussed with them the difficulty caused by Holmes' changed appearance. Defendants requested an evidentiary hearing to determine whether the testimony had been tainted by outside information and further requested sequestration of the visiting family members as potential witnesses. The court denied their request.

The next day, the prosecutor informed the court that a woman had called his office and informed him that Forrest might have been coached. The judge decided to hold an evidentiary hearing.

Rhonda Youngblood, the sister of Kenneth Newell, Forrest's son-in-law, testified that she had telephoned the prosecutor's office after she had received an implied threat from the wife of Vernon Creamer, a nephew of the Barfield brothers. She, Newell and Forrest's stepdaughter, Bambi Lynn Bennet visited Forrest during the noon recess. At that time, they showed him baby pictures and discussed family problems. Forrest expressed concern about his inability to identify Holmes. Bennet then volunteered, "If he's the one I think he is, he had grey hair". There was no further discussion.

Newell testified that Forrest stated that he was unable to identify Holmes because he could remember little about him except that he wore a hat and had a mustache. Bennet then volunteered "he was sitting back behind the lawyers." There was no further identification of Holmes.

Bennet testified that she had no memory of describing Holmes or his position in the courtroom. Her discussion with Forrest had been limited to family matters.

A deputy United States Marshal who sat four feet from the partially opened door of the room where Forrest and his visitors conversed testified that he had overheard some conversation but he had heard no mention of Holmes.

The district judge granted Holmes' oral motion *in limine,* forbidding Forrest from identifying Holmes before the jury and prohibiting defense counsel from cross-examination on the prior identification. Plotke and Dennis allege that the ruling denied them their sixth amendment rights to confrontation by denying an opportunity to show Forrest's bias and lack of veracity.

■ The court properly suppressed the identification in order to protect Holmes. *United States v. Berkowitz,* 662 F.2d 1127, 1138–39 (5th Cir.1981). Evidence that Forrest may have lied at the *James* hearing would serve only to impeach his character. *United States v. Lewis,* 676 F.2d 508, (512) (11th Cir.), *cert. denied,* 459 U.S. 976, 103

S.Ct. 313, 74 L.Ed.2d 291 (1982). The suppression of a possibly tainted identification would have been futile if Holmes' co-defendants were allowed to refer to it in cross-examination.

The defendants were allowed ample opportunity to attack Forrest's motivation and character. He was impeached by past convictions for which he was serving a total of twenty-eight years of Federal prison sentences. The convictions included perjury, jury tampering and theft related crimes. Forrest admitted that he took great pleasure in testifying against Dennis and Hodge because his convictions were obtained largely upon their testimony and it was suggested that Plotke's wife had been responsible for reporting Forrest's jury tampering. Forrest admitted to having hopes of improving his lot through his testimony. The United States Attorney agreed that the government would not use his testimony against him or any member of his family and agreed not to oppose an application for bond pending appeal of his convictions. Forrest hoped to strike a favorable plea bargain if his convictions were reversed for new trial on a then pending appeal. In exchange for his testimony the prosecution had agreed to request that the Bureau of Prisons give him a preference over other qualified co-conspirators by assigning him to the prison at Eglin Air Force Base, Florida, and had also agreed to notify the courts, the Bureau of Prisons, the Parole Commission and other appropriate agencies of his cooperation and the apparent veracity of his testimony.

It is difficult to believe that cross-examination concerning the noon recess and any subsequent time consuming and contradictory statements of the various parties to the noontime conversation could have cast Forrest's character in a worse light than the evidence which defendants did present to the jury. A conviction will not be reversed on appeal if the defense counsel was allowed to achieve his purpose despite the restrictions imposed. *United States v. Haimowitz,* 706 F.2d 1549, 1559 (11th Cir.1983), *U.S. v. Lewis,* 676 F.2d at 512. The evidence of Forrest's bad character was so overwhelming that further impeachment by reference to collateral matters was totally unnecessary. *Id.* The court properly exercised its discretion.

### Conclusion

Having found the evidence sufficient as to each defendant and no reversible procedural error, WE AFFIRM.