Carrol Joe DRISKILL,
Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 88–7.

Supreme Court of Wyoming.

Sept. 22, 1988.

Leonard Munker, State Public Defender, Steven E. Weerts, Sr. Asst. Public Defender, Gerald M. Gallivan, David Askman and Jean D. Thomas, Wyoming Defender Aid Program, Student Interns, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Sr. Asst. Atty. Gen., and Karen A. Byrne, Asst. Atty. Gen., for appellee.

Before CARDINE, C.J., THOMAS, URBIGKIT and MACY, JJ., and BROWN, J.*, Ret.

URBIGKIT, Justice.

We review on appeal this case of the rape of a female real estate salesperson. Victimized by a knife wielding attacker, the victim escaped without serious injury and the defendant, who was caught, confessed and convicted, appeals from a sentence for kidnapping and attempted first degree sexual assault as concurrent of twelve to fifteen years on each count to run consecutive to a ninety-nine year rape sentence now being served in Alabama for a subsequent offense of a like kind.

Appellant, Carrol Joe Driskill (Driskill), contends in appellate issue that with questionable proof of attempted intrusion, a lesser included instruction of the fourth degree sexual assault misdemeanor charge, as requested and denied, should have been given. Conjunctively, he also challenged the application of the kidnapping statute with the contention that, if the sexual assault offense was only a misdemeanor, the predicate intent for kidnapping of intent to commit a felony would also be lacking.

After a course of being shown houses by the victim, Driskill, as a purported purchaser, pulled a knife on his host and, by her testimony, attempted to require fellatio; and when denied, failed in an effort to engage in vaginal intercourse during the course of near aimless driving and parking in and around the City of Cheyenne.

In pretending to be ill, the victim successfully denied the strongly presented advances and ultimately secured her release with minimal physical injury. Thereafter, Driskill was arrested in Alabama following a similarly completed sexual assault for which he received a ninety-nine year sentence in that state's penitentiary. Subsequent to sentencing, he was returned to Wyoming for the present trial and convicted on both counts of attempted first degree sexual assault and kidnapping, with concurrent sentences as consecutive to the Alabama penal term.[1]

■ The somewhat sophisticated argument made by Driskill is not cogently persuasive. Out of this incident of a life endangered rape, Driskill contends that lacking proof of attempted intrusion, the sexual act as the first degree sexual assault felony is unproven. He also contends that the consequent felony premise for kidnapping is also unfounded. The difficulty with the posture is the record is unchallenged of attempted oral sex, biting in the performance of a sexual activity, and admitted assault with a knife as a dangerous weapon, which is the threatening force for demanded submission.

■ More directly presented is the question of whether fourth degree sexual assault is a lesser included offense within the facts presented. We hold that *Bueno–Hernandez v. State*, 724 P.2d 1132 (Wyo.1986), cert. denied 480 U.S. 907, 107 S.Ct. 1353, 94 L.Ed.2d 523 (1987) is conclusive by its analysis that a fourth degree sexual assault is of a dissimilar character from attempted first degree sexual assault. Consequently, Driskill does not meet the test for any instruction on contended lesser included offense. Factually, there is nothing in the extended events of this occurrence that would justify a fourth degree sexual assault instruction. The initial defense of identification having failed in trial defense, Driskill was faced with a "rough sex" occurrence as an aggravated assault with a deadly weapon, which events presented nothing to justify the misdemeanor sexual assault charge.

■ This court follows not only the accepted test that the lesser included offense instruction should be given if factually jus-

---

1. Age twenty-five at trial, Driskill is faced with the ninety-nine year Alabama sentence involving rape and credit card theft, the consecutive dual Wyoming sentences of twelve to fifteen years, a Kentucky detainer for robbery, and the admitted theft of a Cadillac in Kansas, which was driven during both the Wyoming and Alabama occurrences. His criminal offense history commenced when he had reached the age of twelve.

tified,[2] but also an analysis for determining when appropriate as defined in *United States v. Chapman*, 615 F.2d 1294 (10th Cir.), cert. denied 446 U.S. 967, 100 S.Ct. 2947, 64 L.Ed.2d 827 (1980) and adopted for usage within this state in *State v. Selig*, 635 P.2d 786 (Wyo.1981). See also *Bueno–Hernandez*, 724 P.2d 1132. That test for lesser included offense instruction contains a five element factor, including (1) proper request; (2) elements of a lesser offense are identical to part of the elements of the greater offense; (3) some evidence sufficient to justify conviction of the lesser offense; (4) proof sufficient in dispute in differentiating the two offenses so that the jury could consistently find the defendant innocent of the greater and guilty of the lesser included offense; and (5) mutuality so that either the state or the defendant may request the instruction. See also *Balsley v. State*, 668 P.2d 1324 (Wyo.1983).

This was not a "mere" sexual contact case as contemplated within the character of fourth degree sexual assault. W.S. 6–2–301(a)(vi) provides:

"Sexual contact" means touching, with the intention of sexual arousal, gratification or abuse, of the victim's intimate parts by the actor, or of the actor's intimate parts by the victim, or of the clothing covering the immediate area of the victim's or actor's intimate parts.

The event related by the victim was either an attempted first degree sexual offense or a misidentification of the criminal assault actor.

Driskill contends that a delayed report by the victim of the attempted oral sex created a doubt about that facet of the occurrence so that the jury could have determined that he had only been guilty of fondling and like conduct. Contrarily, we recognize that as to the character of his admitted conduct, only the victim's testimony was available and in no regard does that evidence come within the limited behavior contemplated in a misdemeanor sexual assault charge. It goes without saying that Driskill did not testify or present other conflicting evidence except by cross-examination of the female victim.

The State alternatively argues with some persuasion that even if the offense had been fourth degree sexual assault, it would have been a felony by virtue of the enhancement provision of Wyoming law as aggregated by the Alabama conviction.

An actor who is convicted of sexual assault shall be punished by the extended terms of subsection (c) of this section if:

\* \* \* \* \* \*

He previously has been convicted of any crime containing the same or similar elements as the crimes defined in W.S. 6–2–302 or 6–2–303.

[Sexual assault in the first and second degree.] W.S. 6–2–306(b) and (b)(i).

Sexual assault in the fourth degree is a felony punishable by imprisonment for not more than five (5) years.

W.S. 6–2–306(c)(iii). We need not answer the inquiry of enhancement by conviction of an offense committed subsequent to the charged crime since the denial of the lesser included offense instruction is affirmed.

■ This court would, however, further concur with the State that Driskill lacked cogent argument or persuasive authority that the kidnapping conviction under the factual situation was dependent upon a felony rape conviction. The condemnation pursuant to W.S. 6–2–201 of unlawful confinement by use of force or threat with intent to inflict bodily injury or to terrorize the victim is demonstrated. Confinement with intent to terrorize accomplishes the kidnapping offense. *Handy v. State*, 24

---

**2.** W.R.Cr.P. 32(c), which is the same as F.R.Cr. P. 31(c), provides:

*Conviction of lesser offense.*—The defendant may be found guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein if the attempt is an offense.

See *State v. Selig*, 635 P.2d 786 (Wyo.1981); *Spaziano v. Florida*, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984); *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980); and *Keeble v. United States*, 412 U.S. 205, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973).

Ark.App. 122, 749 S.W.2d 683 (1988). We could also find the required infliction of bodily injury as shown in testimony about the biting incident which produced pain. Sufficiency of the evidence to affirm each conviction is not really a viable issue in this case. *Baum v. State,* 745 P.2d 877 (Wyo. 1987).

An alternative basis for this decision could be found by application of the concurrent sentence doctrine. *United States v. Sandoval,* 791 F.2d 929 (5th Cir.), cert. granted sub nom. 479 U.S. 960, 107 S.Ct. 454, 93 L.Ed.2d 400 (1986). Cf. *Ray v. United States,* 481 U.S. 736, 107 S.Ct. 2093, 95 L.Ed.2d 693 (1987).

The factual efficacy for the concurrent sentence doctrine could hardly find a more logical case for application than is presented here. No real contest to the kidnapping conviction was presented and that sentence should obviously be affirmed. The concurrent attempted sexual offense sentence can hardly be meaningful, except academically to Driskill who faces the ninety-nine year Alabama sentence and a host of other potential charges derived from his lifetime of crime. However, this court has not elected to apply the concurrent sentence doctrine in this case since it was not considered or briefed by either litigant and apparently has not previously been considered by either defense or prosecution in this or other state court proceedings in Wyoming.

█ It is well established that the concurrent sentence doctrine does not present a jurisdictional inquiry. See *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). As such, any future consideration by this court when presented by appellate brief will be accorded attention within the judicial efficiency context. The concurrent sentence doctrine applies when the defendant is given concurrent (or overlapping) sentences on multiple charges, and on appeal, where conviction on one of the charges is sustained to achieve the maximum sentence which resulted as if all counts of the conviction would be affirmed. It is stated that the reviewing court may not decline to pass upon the validity of the defendant's conviction for other charges if the possibility of ruling in his favor affords any evidence of concrete prejudice to the defendant as a consequence of the challenged counts. Comment, *The Concurrent Sentence Doctrine After Benton v. Maryland,* 7 UCLA–Alaska L.Rev. 282 (1978). See also *United States v. Gordon,* 634 F.2d 639 (1st Cir.1980) and Ray, 107 S.Ct. 2093. A quick cite search revealed 369 entries in current cases in the federal system where the concurrent sentence doctrine has been discussed and thirty-five for state courts. Further authority is afforded in Comment, *The Collateral Consequences Exception to The Concurrent Sentence Doctrine,* 44 Temp.L.Q. 385 (1971); Comment, *Benton v. Maryland: A Further Extension of the Rights of the Individual in Criminal Proceedings,* 18 Kan.L.Rev. 309 (1970); and Note, *The Federal Concurrent Sentence Doctrine,* 70 Colum.L.Rev. 1099 (1970).

` Courts accepting the discretionary use of the doctrine tend to look primarily to the likelihood and significance of collateral consequences in determining whether to rule on the remaining counts. Some apparently would apply a standard that comes very close to that utilized in many jurisdictions to establish mootness itself. To avoid review, the government must bear the burden of establishing that there is "no possibility that adverse collateral consequences would flow" from the remaining counts.

[Footnotes omitted.] 3 W. LaFave and J. Israel, Criminal Procedure § 26.5 at 249 (1984).

█ For the concurrent sentence doctrine to apply, the sentences must be identical. See *Ray,* 107 S.Ct. 2093. When identical, the question whether cause for consideration does exist should not be disregarded by either the defendant nor the state. It should be recognized that the concurrent sentence doctrine has been utilized not only to affirm questioned charges but also to reverse. See *United States v. Hooper,* 432 F.2d 604, 139 U.S.App.D.C. 171 (D.C.Cir. 1970). The pervasive arguments in the singular case analysis demonstrate that a responsibility for litigants to argue the actual existence of a real controversy is not unannounced in advocate theory and responsibility. It is argued by one text writer that

[o]ne principle that courts should follow is that if an issue is easy to resolve on

the merits, the doctrine should not apply since the expenditure of judicial resources would not be significant. The application of the doctrine may be appropriate when the issues involved are factual ones which the trial court is better equipped to resolve.

Comment, supra, 7 UCLA–Alaska L.Rev. at 306.[3]

It also should be recognized that an identity of concurrent sentences affords some reduced risk from appellate reversal if the trial judge can find the desired level of punishment within one statute. Little benefit is indicated in a division between two consecutive sentences if a concurrent sentence provides the appropriate punishment.

AFFIRMED.

THOMAS, J., files a special concurrence in which CARDINE, C.J., joins.

THOMAS, Justice, specially concurring, with whom CARDINE, Chief Justice, joins.

I can only concur in the result in this case. The inclusion of the material relating to the concurrent sentence doctrine is purely gratuitous on the part of the majority. It was neither discussed nor briefed. Consequently, there is no justification for its inclusion in this opinion except as an academic matter.

I have serious reservations about the viability of the concurrent sentence doctrine. I believe that the instances in which the government could assume the burden of establishing that there is "no possibility that adverse collateral consequences would flow" from the counts as to which error is asserted (3 W. LaFave & J. Israel, Criminal Procedure § 26.5 at 249 (1984)) indeed would be very few. It seems to me that there are adverse collateral consequences which flow from any felony conviction, at least potentially, and if the concept of the concurrent sentence doctrine were squarely before the court, I question whether it could be adopted. Furthermore, if the concurrent sentence doctrine has any utility, the court certainly overlooked a glaring opportunity to invoke it in *Howard v. State*, 762 P.2d 28 (Wyo.1988).

---

**3.** It is not determinable why the United States Supreme Court granted certiorari in Ray in 1987 and then reversed per curiam on an aggregated $50 assessment premise. See likewise, *Pinkus v. United States*, 436 U.S. 293, 98 S.Ct. 1808, 56 L.Ed.2d 293 (1978). It is apparent that Benton was intended to redirect and restrict the use of the doctrine, and since that time, the federal circuits have clearly taken different approaches. Heavy use continues in the fifth and eleventh circuits, while a total elimination has been decreed in the ninth circuit. Cf. *United States v. DeBright*, 730 F.2d 1255 (9th Cir.1984), where the use of the concurrent sentence doctrine was rejected as a discretionary means of avoiding review of criminal conviction, with *United States v. Strickland*, 509 F.2d 273, 274 (5th Cir.1975), where the additional count, even if the conviction remains affirmed under the doctrine where "appellant has not shown any reason why the convictions * * * [will not] add anything material to the pains and penalties he will suffer from the conviction * * *" of the affirmed count. See also *United States v. Plotke*, 725 F.2d 1303 (11th Cir.), cert. denied sub. nom. 469 U.S. 843, 105 S.Ct. 151, 83 L.Ed.2d 89 (1984); *United States v. Johnson*, 700 F.2d 699 (11th Cir.1983); *Gordon*, 634 F.2d 639; and

*United States v. Febre*, 425 F.2d 107 (2nd Cir.), cert. denied 400 U.S. 849, 91 S.Ct. 40, 27 L.Ed.2d 87 (1970), where the doctrine was applied to obviate resentencing or a new trial where some of the conviction counts were reversed on appeal. To date of publication in 1978, the UCLA–Alaska Law Review contains a critique of the decisions and each of the federal circuit court systems.

It is apparent that the doctrine has received singularly less attention in the state courts, and the trend, if one is to be discerned, is that in most cases the doctrine is not applied either and that the application may lack benefit in the judicial expediency weighing or the possibility of collateral consequences being perceived. Cf. *Frizzell v. State*, 238 So.2d 67 (Fla.1970), where the doctrine was put in issue, as similar to *Villafranca v. People*, 194 Colo. 472, 573 P.2d 540 (1978), where a total exclusion was mandated. Utilization of the doctrine can be found within present cases in Missouri, *State v. Davis*, 624 S.W.2d 72 (Mo.App.1981) and in Maryland, *Smith v. State*, 51 Md.App. 408, 443 A.2d 985 (1982). See discussion, 3 W. LaFave and J. Israel, supra at 246. See also, *State v. Edwards*, 51 Wash.App. 763, 755 P.2d 821 (1988).