Andrew PIXLEY, Appellant
(Defendant below),

v.

The STATE of Wyoming, Appellee
(Plaintiff below).

No. 3440.

Supreme Court of Wyoming.

Oct. 19, 1965.

James H. Sperry, Worland, Robert A. Hufsmith, Jackson, Carleton A. Lathrop, Cheyenne, for appellant.

Dean W. Borthwick, Deputy Atty. Gen., Cheyenne, Floyd R. King, Jackson, for appellee.

Before PARKER, C. J., and HARNSBERGER, GRAY and McINTYRE, JJ.

Mr. Justice HARNSBERGER delivered the opinion of the court.

On the 30th day of October, 1964, by the amended information of the County and Prosecuting Attorney of Teton County, Wyoming, the defendant was charged upon one count with having on the 7th day of August, 1964, committed murder in the first degree in the perpetration of rape upon a female child of the age of 12 years.

On November 12, 1964, the arraignment of defendant was had, at which time defendant acknowledged he had received a copy of the amended information more than 24 hours previously, whereupon the court explained to defendant that as the first information was in two counts the State was required to elect upon which count it would proceed, which it did; corrected two stenographic errors; and filed the information as thus amended.

The court then inquired if defendant was ready to plead to the amended information, and his counsel replied that he was and waived the reading of the amended information. When the court asked defendant to say "are you guilty or not guilty to the offense therein charged," defense counsel stated, "we plead not guilty to the offense as charged, and further, not guilty by reason of insanity at the time of the commission of the alleged offense."

Defense counsel moved to consolidate the case with another case of alleged homicide. The motion was denied.

Thereafter, on December 11, 1964, on motion of defendant, a change of venue was granted and the case certified to Washakie County for trial, following which defendant moved for leave to withdraw his plea of not guilty and further not guilty by reason of

insanity at the time of the alleged offense theretofore entered and for permission to enter a plea of guilty.

On January 29, 1965, at the time and place set for defendant's trial, the defense read its motion for consolidation with a homicide case pending in another jurisdiction and presented its argument in support thereof, following which the State replied. The defense then had the defendant sworn and testified he wanted the cases consolidated. The State having declined to cross-examine, the defense made further argument to which the State made its response. The motion was denied.

On February 1, 1965, when the court reconvened, the defense moved to change defendant's plea from innocent and from innocent by reason of insanity, to a plea of guilty to the charge. As the jury panel was present, the court inquired if defense counsel wished to have that done in the presence of the jury panel, and defense counsel answered "Yes" and that "This is the wish of the defendant also."

The court reminded defendant that he had appeared before a judge of the district court at Jackson, Wyoming, and had been arraigned on the amended information charging him with murder in the first degree at which time the defendant pleaded not guilty, not guilty by reason of insanity at the time of the commission of the alleged offense, and asked defendant if he wished to withdraw that plea and enter a plea of guilty. Defendant replied, "Yes, your Honor." At some length the court then examined the defendant asking if he understood that if he entered a plea of guilty his punishment would be either death or life imprisonment at hard labor; if realizing that fact he still desired to plead guilty; that he had previously offered to plead guilty if the court would consolidate the cases against him; that the court had refused the consolidation; if he understood he was charged with murder in the first degree; that another charge of murder in the first degree was pending against him and that the State proposed to try him on both charges of murder in the first degree; that if he pleaded guilty the punishment would be either death or life imprisonment; if with that understanding he wished to plead guilty; that under the law he was presumed to be innocent of any offense and that presumption remains throughout a trial until the State proves his guilt to a jury of 12 people beyond a reasonable doubt; that if he stood trial upon his plea of not guilty and not guilty by reason of insanity at the time of commission of the alleged offense, the court would instruct the jury that they could find him guilty of the lesser offense of murder in the second degree which carries a penalty of 20 years to life; that the jury could find him guilty of manslaughter which carries a sentence of from one year to 20 years; that first degree murder carries all the lesser degrees; that on his insanity plea the State has to prove his sanity beyond a reasonable doubt and that he was sane or the jury should acquit him. To each of these questions separately asked the defendant, he personally answered either "Yes," "Yes, sir" or "Yes, Your Honor."

The judge then inquired of defendant if he had ever been threatened or coerced or induced by anyone, particularly anyone in the offices of the county attorney, sheriff's office, or any other official of the State or county, to make and enter the plea of guilty; if he had been promised any reward, leniency, or told he would get off easy or anything like that, to which questions defendant answered "No, sir" and "No, Your Honor." Finally the court asked defendant to tell the judge carefully if he was making the change in his plea voluntarily and of his own free will, to which the defendant replied, "Yes, sir." Only then did the court announce that the changed plea would be accepted; the clerk was instructed to draw 12 names from the jury box; and voir dire examination of jurors was begun.

After the trial jury was selected and sworn, the State and defense evidence adduced, and the court's instructions given to the jury, the State gave its argument

to the jury, followed by the defense argument to which the State replied.

The jury retired and rendered the following verdict:

"We, the Jury, duly impanelled and sworn to try the issue in the above-entitled case do find the defendant Andrew Pixley guilty of murder in the first degree."

This verdict did not contain the qualification, "without capital punishment."

The court informed defendant of the verdict, asked him if he had anything to say why sentence should not be pronounced, and upon defendant's replying "No, your Honor," defendant's counsel stated that defendant had told his father-in-law [sic] [his stepfather] that if, as he thought, he might be so convicted, he did not wish to appeal the verdict, he wants to go to his death, and defense counsel asked to have a long time to be sure defendant did not truly wish to appeal. Then defense counsel asked defendant if what counsel had said was not true, and defendant answered, "It's true." Defense counsel further asked of defendant, "You don't feel that there should be an appeal, do you?" To which defendant answered, "No."

Thereupon the court pronounced the following sentence:

"Andrew Pixley, it will therefore be the order of this Court that you be taken by the Sheriff of this County and delivered to the Warden of the State Penitentiary of Rawlins, Wyoming, where you shall be put to death and executed before the hour of sunrise on the third day of May, 1965, by the Warden of said Penitentiary or in case of the Warden's death, disability or absence, by the Deputy Warden thereof, in the manner provided by law, to-wit: by means of lethal gas administered within the walls of said penitentiary. And may the Lord have mercy upon your soul."

Within the time limited by law one of defense counsel filed notice of appeal from the judgment and sentence of the court and asked stay of execution of the sentence pending the appeal. The stay was granted and upon defense's request a transcript of the testimony and evidence was furnished the defense without cost.

Although not appearing in the record on appeal, in a writing certified by a notary public as being in the handwriting of defendant and addressed to and received by this court, defendant insisted he wanted the appeal, filed by one of the attorneys who represented him at the trial, withdrawn and that he wanted the attorney withdrawn at once.

Notwithstanding these requests of defendant, this court directed that the appeal be prosecuted and for that purpose appointed a learned and experienced attorney as special counsel to assist those who represented defendant at his trial and ordered that the record on appeal be filed herein without cost to the defendant.

The appealing defense insists there is no "trial" upon a defendant's plea of guilty to first degree murder, and that proceedings held thereafter are to be treated as a plea for mercy or in mitigation. Consequently, says the defense, criminal procedural statutes giving the State the right to open and close argument are inapplicable and to deny the defense that right was prejudicial error.

In support of its contention that there is no "trial" when the defendant pleads guilty, Hollibaugh v. Hehn (1905), 13 Wyo. 269, at 276, 79 P. 1044, at 1047, is cited as saying, "Upon the plea of guilty there was nothing to be tried by a jury. Such a plea admits the material facts alleged in the indictment or information * * * and is equivalent to a conviction."

In part, that statement is as true now as it was when made by this court, but the portion of the statement saying, "Upon the plea of guilty there was nothing more to be tried by a jury," is no longer the law, since, by amendment, c. 87, § 1, S.L. of Wyoming 1915, the law under which Holli-

baugh was prosecuted, became changed and now reads:

"Whoever purposely and with premeditated malice or in the perpetration of, or to attempt to perpetrate any rape, arson, robbery, or burglary, or by administering poison or causing the same to be done, kills any human being, is guilty of murder in the first degree and shall suffer death, but the jury may qualify their verdict by adding thereto, 'without capital punishment' and whenever the jury shall return a verdict qualified as aforesaid, the person convicted shall be sentenced to imprisonment, at hard labor, for life." § 6–54, W.S.1957.

So now, even though there be a plea of guilty to a charge of murder in the first degree, something further does remain to be tried by the jury. This court, in State v. Best, 44 Wyo. 383, 389, 12 P.2d 1110, 1111, said, "A defendant has the right to have a jury not only to try the issue of guilt or innocence, but also to decide what the punishment shall be."

But the defense further says that when the right to trial on the question of guilt or innocence is waived by a guilty plea, thus leaving only the question of punishment to be decided by the jury, the "proceeding" is in the nature of mitigation of sentence with the defendant having the burden of going forward with the evidence to shift the statutory penalty of death to the penalty of life imprisonment at hard labor.

As ingenious as is this argument, it fails when its premise is rejected. If any question remains for the jury to decide, there remains an issue upon which the State must take the affirmative. There is no shifting of the burden of proof. The plea of guilty is not analogous to a plea of confession and avoidance. The defendant does not say, "Yes, I am guilty, but—." Our statute does not charge the jury to show mercy nor does it suggest pleas in mitigation. It only leaves the jury to judge whether the circumstances of the crime warrant death or life imprisonment. We do not, therefore, agree that the guilty plea so converts the prosecution that it is no longer subject to our criminal procedural statute which provides:

"Order of proceedings on the trial.—After the jury has been impaneled and sworn, the trial shall proceed in the following order:

*      *      *      *      *      *

"Seventh—When the evidence is concluded, and the charge given by the court, unless the case is submitted without argument, the counsel for the state shall commence, the defendant or his counsel follow, and the counsel for the state shall conclude the argument to the jury." § 7–228, W.S.1957.

Section 7–237, W.S.1957, making certain civil rules applicable to the conduct of a jury in criminal trials, and the civil cases from other jurisdictions cited in support of the defense theory, are entirely inapplicable to the question of whether the State or defense has the opening and closing of oral argument in the face of our above-cited criminal procedural statute.

The defense, however, contends that, while § 7–228 has remained unchanged since 1876, our statute pertaining to first degree murder has been altered substantially, and, therefore, is now inconsistent with § 7–228. Defense also says the sole effect of the amendment is to shift the plea in mitigation or for mercy from the judge to the jury, thus carrying with it the "traditional" right of defendant to make this plea without intervention of the prosecution. Thus the over-all position of the defense, in connection with its claim of right to open and close argument, seems to be that the defendant, by pleading guilty, gained some new, additional and different right to those rights accorded him by the Constitutions and laws of both our Federal and State Governments.

The amendment of our first degree murder statute certainly does not contain any express provision changing our criminal trial procedure when there is a plea of

guilty, nor is there the slightest implication that any such change was intended by our legislature. Furthermore, the decisions of this court have repeatedly held that the effect of a plea of guilty was tantamount to a conviction and that it waived the State's need to convict. Hollibaugh v. Hehn, supra; State v. Best, 44 Wyo. 383, 12 P.2d 1110; State v. Brown, 60 Wyo. 379, 151 P.2d 950. A conviction of first degree murder, whether obtained by jury determination or by guilty plea of the accused, requires the same procedure for fixing punishment.

The single difference upon the trial is that when the plea is "not guilty" the State must prove guilt. When the plea is "guilty," that proof is rendered unnecessary. But the trial procedure does not change. Although the guilty plea obviated the need of other proof of guilt, the State must still bring to the jury proof of the facts and circumstances relevant to the commission of the crime in order to enable the jury to evaluate the measure of defendant's accountability for the crime and to accordingly fix the punishment. While the evidence which has bearing upon the punishment to be meted out may be and almost invariably is much the same evidence which would be necessary to prove guilt, such evidence is nevertheless properly brought to the jury in exactly the same manner and under the same procedural rules whether the plea is guilty or not guilty. The burden upon the State to prove every fact necessary to warrant the jury's conclusion that the defendant shall suffer the extreme penalty which is sought by the State, is not shifted by the defendant's plea of guilty. The defendant gains no new right by making that plea and is entitled to no new consideration by virtue of it.

Whether a plea of guilty or not guilty is entered, the trial of the accused proceeds in the same manner. The elimination of the need to prove guilt is all that is changed upon a plea of guilty. In the one case the State proves guilt; in the other the defendant confesses it. In either case, guilt once being established, the jury moves on to determine the punishment without the taking of any more evidence, without receiving any more instruction, and without hearing any more argument.

■ We, therefore, hold that the procedure prescribed by § 7–228, W.S.1957, governs and that the State was entitled to open and close the argument.

■ The defense next maintains there was prejudicial error in the trial court's permitting the mother and father of the defendant's victim to remain in the courtroom during the trial after the court had sustained defense's motion to invoke the rule excluding proposed witnesses from the courtroom during the examination of other witnesses. In oral presentation defense counsel stated that the parents were seated in the spectators' section, and as far as the record shows their only testimony was as to their finding of the dead bodies of their children and their actions following and up to the time when any other witness came upon the scene. In consequence, there was no other witness who testified concerning these matters. Even the defense admits that a purpose of exclusion of witnesses is usually so that one will not hear what the other is testifying so that "then you will be more apt to get the truth," although counsel said that in a criminal case there is a different situation. We fail to see that difference. This reason for exclusion was noted in Huddleston v. Commonwealth (1950), 191 Va. 400, 61 S.E.2d 276, 279, where it was said the purpose was to deprive witnesses of opportunity to shape their testimony to correspond to other witnesses. Also in Witt v. United States (1952), 9 Cir., 196 F.2d 285, the purpose was said to be to prevent witnesses from matching testimony of others and that the matter was in the discretion of the court.

The defense next takes exception to the court's having permitted the parents to remain as "complaining parties." Concededly, the parents were not shown to have signed any criminal complaint, and in this

sense they were not therefore the complainants, nor even the complaining witnesses. But we cannot say they were not complaining parties when the prosecution was of the confessed murderer of their daughter.

■■ In any event, the matter of exclusion of witnesses is largely a matter resting in the sound discretion of the court, and only a grave abuse of that discretion should be noticed. In Haines v. Territory, 3 Wyo. 167, 177, 13 P. 8, 14, it is stated, "The matter of the exclusion of any and all witnesses [including the prosecuting witness] from the court-room during the progress of the trial is wholly in the discretion of the court, and will not be reviewed, except for gross abuse." The holding in Martinez v. State, 80 Wyo. 325, 333, 342 P.2d 227, 229, is quite similar. We find nothing in the testimony given by the parents, nor does the record disclose any act or conduct on their parts while sitting in the spectators' section of the courtroom to justify the contention that the court abused its discretion in permitting them to remain.

Prejudicial error is claimed because of the manner in which the State conducted its voir dire examination of prospective jurors. In defense's brief it is said "the State asked every prospective juror, in the presence of the entire panel, whether he or she felt 'there could be a crime that would be committed which would be horrible enough to warrant the infliction of the death penalty', or words of similar import," and in oral presentation defense counsel said the State asked some 60 or 70 times, of practically every juror, in the presence of the jury if there could be committed a crime which would be horrible enough to warrant infliction of the death penalty. The record · hardly bears out either of these statements as it appears from the record that the question asked the first jury panelist by the State was if she felt there could be a case that would be severe enough or a crime that would be heinous enough and cruel enough to warrant the giving of the person who was guilty of that crime the death penalty. Practically the same question was asked each succeeding jury panelist until defense counsel interjected the word "horrible" by asking, "You have read the accounts about the nature of this crime, too, haven't you, *horrible nature* of it in the paper?" (Emphasis supplied.) Again defense counsel inquired of still another jury panelist, "Even though this is a very *horrible touching and pathetic type of transgression,* do you feel that you can give it fairly and impartially?" (Emphasis supplied.) It was not until after defense counsel had asked the above questions using the words "horrible," "touching," "pathetic type of transgression," that the State asked, "you have heard counsel for the defense talk about the *horrible crime;* do you feel that there could be a crime that would be horrible enough where the death penalty would be inflicted?" (Emphasis supplied.) Also we note that while the State used the word "horrible" a total of but 7, not 60 or 70, times in its voir dire examination, the defense, after starting its use, continued to emphasize it by using the word in questioning 9 different prospective jurors and otherwise characterizing the crime as "vicious," "very horrible," "touching and pathetic type of transgression."

The defense tells us that "every premeditated murder is horrible, cruel and heinous" and we agree. Yet we recognize our legislature has seen fit to leave to jury decision as to whether in a given case or circumstance that "horrible, cruel, heinous" crime is deserving of the extreme penalty which was sought by the State in this case or should only suffer the lesser punishment of life imprisonment at hard labor.

■ Defense calls attention that in State v. Aragon, 41 Wyo. 308, 316, 285 P. 803, 806, the State was permitted to ask on voir dire examination "whether they had conscientious scruples against inflicting the death penalty, if the law and the evidence warranted it," seemingly suggesting that this is the only proper question to ask. It is not. Where the law gives unto the jury

the determination of whether to inflict the greater or a lesser penalty, it is the right and the duty of the State to ascertain whether a prospective juror's mind is foreclosed against infliction of one of the allowable penalties, and this remains true no matter how terrible, horrible, cruel, vicious and depraved the crime might be. In Kirkendoll v. State (1955), 198 Tenn. 497, 281 S.W.2d 243, 251, it is pointed out that the examination of the juror on the voir dire should be to discover if the prospective juror was unwilling to execute the laws of the State. Therefore, an unwillingness on the part of a juror to inflict the death penalty under any circumstance would be an unwillingness to properly execute the laws of this State. Again in Payne v. State (1954), Okl.Cr., 276 P.2d 784, 790–791, it was said that the form of questions put to jurors on their voir dire examination is a matter within the discretion of the court and that a liberal attitude should be given as to the manner and the extent of the examination touching their qualifications and that such questions cannot be prescribed by any unyielding rule. Also in State v. Bunk (1950), 4 N.J. 461, 73 A.2d 249, 19 A.L.R.2d 1316, 1323, it is pointed out that a wide latitude of voir dire examination of prospective jurors is allowed and that the state has the right to inquire as to a prospective juror's attitude respecting the infliction of the death penalty, and it was proper for the state to try to ascertain if a juror would inflict the death penalty if there was shown by evidence that the crime was of such atrocity as to warrant that extreme penalty

■ The conduct of State's counsel and his examination of the jury on the voir dire was proper and even exemplary, and we find it to be above criticism.

Lastly defense criticizes an instruction given which contains the following:

"This duty you shall perform with sincere judgment, and sound discretion, uninfluenced by pity for, or by passion or prejudice against, any of the litigants in this case. The law

forbids you to be goverened [sic] by mere sentiment, conjecture or speculation not supported by the evidence, by sympathy, passion, prejudice, vengeance, public opinion or public feeling. The litigants have the right to demand, and do demand and expect, that you will conscientiously and dispassionately consider and weigh the evidence and apply the law of the case, and that you will reach a just verdict, regardless of what the consequences of such a verdict may be. That verdict must express the individual opinion of each juror."

Again the defense points out that in State v. Aragon, supra, the court simply told the jury, 41 Wyo. 315, 285 P. 805, "if you shall find and determine that the defendant, although guilty, should not receive capital punishment, in which event you will use the form of verdict containing such expression," and in State v. Brown, 60 Wyo. 379, at 395, 151 P.2d 950, at 955, the court instructed " 'Under the laws of the State, a person who is found guilty of murder in the first degree shall suffer death or be imprisoned in the penitentiary for life, in the discretion of the jury trying the case.' " The fact that in the two cases last mentioned this court found no occasion to criticize those instructions does not necessarily preclude the giving of another or different, proper instruction.

■ No objection or exception was taken to the giving of the criticized instruction in this case, and defense's brief has not insisted it was erroneous. Under such circumstances, we may only consider the defense's complaint against the instruction if we deem its giving constituted "fundamental error."

In People v. Polk, Cal., 44 Cal.Rptr. 773, 402 P.2d 845, 854, cited by defense, it appears that notwithstanding the court said, "The trial court may, however, properly aid the jury by stating the kinds of factors that may be considered, thereby setting the tone for the jury's deliberation," by a four to three decision it held that it was er-

ror to instruct the jury when trying the sole issue of penalty, "that the jury cannot be influenced by 'pity for the defendant' or 'sympathy' for him," although such an instruction was appropriate on the issue of guilt, the court saying this was because it "improperly eliminates factors that a jury may consider in fixing the punishment."

This California holding is not the law of this State.

If the court may state to the jury the kinds of factors that may be considered by the jury, it seems clear to us that a caution that only factors which appear by evidence is proper and that such emotional reactions as those which do not appear by evidence should be disregarded.

This is especially true respecting the instruction given in this case by our trial court which limited its admonition of what not to consider to matters which were not supported by evidence.

■ Before the matter of sentence was made mandatory and before the matter of sentencing was taken from the judge and given to a jury, as in cases like the present, the emotional attribute of "pity" or the quality of judicial mercy to be extended was never properly considered except in the light of matter brought to the court's attention. In this proceeding all that was or could have been brought to the jury's attention appeared by evidence in the case, and the effect of the instruction given was merely to remind the jury that it must not go beyond the evidence which had been placed before it. Therefore, the instruction given cannot properly be interpreted as saying more than that. Nor can the giving of the instruction be said to constitute such "fundamental error" as would justify this court in either reversing, remanding for new trial, or reducing the sentence to life imprisonment at hard labor.

As we find no error occurring in the trial of the defendant, this court appoints Friday, the 10th day of December, 1965, for the execution of the sentence pronounced in the court below.

Affirmed.