Claude Frederick LAUTHERN,
Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 87–144.

Supreme Court of Wyoming.

Feb. 9, 1989.

Steven E. Weerts, Sr. Asst. Public Defender, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., and Mary B. Guthrie, Sr. Asst. Atty. Gen., for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

MACY, Justice.

Appellant Claude Frederick Lauthern appeals from his convictions of aggravated burglary, aggravated assault and battery, and attempted second-degree murder.

We affirm.

Appellant presents the following issues:

Issue I

Whether or not the trial court abused its discretion by allowing Mr. Nix to testify, or to provide an alternative remedy, after Mr. Nix was in the courtroom in spite of the court's order sequestering witnesses.

Issue II

Whether or not the trial court erred by failing to merge Appellant's charges or convictions of aggravated burglary and aggravated assault.

Issue III

Whether or not the introduction of evidence, in violation of Rule 404(b), W.R.E., deprived Appellant of a fair trial.

Appellant and Katherine Gunderman were married in 1978, and they divorced in August 1985. After the divorce, Ms. Gunderman frequently lived with appellant in his house in Casper, Wyoming, even though she had her own house in Casper from a previous marriage. Ms. Gunderman spent the night of January 25, 1986, with appellant, but, according to her, he kicked her out of his house on Sunday, January 26, 1986. Appellant and Ms. Gunderman both spent all day January 26 working at a VFW club. Ms. Gunderman left that club in the early evening and went to another VFW club in Casper where she met Alvin Rone, a man with whom she had been previously involved. Ms. Gunderman and Mr. Rone spent that night at Ms. Gunderman's house.

The testimony as to what occurred the following morning was conflicting, but the State's evidence, as accepted by the jury, indicated the following sequence of events. At approximately 9:30 a.m., Ms. Gunderman heard pounding on the door and realized that someone was trying to break into her house. She called the police. Appellant broke a window on the door and was able to reach inside to turn the lock, gaining entrance into the house. He shouted at Ms. Gunderman, " 'I'm going to kill you. I'm going to kill you.' " Ms. Gunderman told appellant to leave, and she picked up the telephone to again call the police. Appellant grabbed the telephone away from her, and he hit her on the head several times with it. He then grabbed a knife and threatened Ms. Gunderman with it, apparently striking at her but not connecting. Appellant also threatened to kill Mr. Rone.

Aroused from sleep by the commotion, Mr. Rone proceeded to the kitchen where appellant jumped at him. At this point, Ms. Gunderman ran out of the house and went to a friend's house to call the police. In describing the ensuing melee, Mr. Rone testified that he saw something in appellant's hand but that he remembered very little after that because he was knocked unconscious and did not regain consciousness until after he had arrived at the hospital.

Appellant fled before the police arrived at Ms. Gunderman's house. The police found the door kicked in, Mr. Rone lying unconscious in a pool of blood, and a brick and telephone on the floor near Mr. Rone's body. Mr. Rone was taken to the hospital. Pieces of Mr. Rone's hair were found on the brick and telephone during laboratory tests. Medical testimony at trial indicated that Mr. Rone had been seriously injured, incurring multiple traumas and fractures, including a skull fracture. The medical testimony indicated that many of Mr. Rone's injuries appeared to be the result of blows with a blunt object.

On February 3, 1986, a criminal complaint was filed in Natrona County court charging appellant with aggravated burglary and aggravated assault and battery, alleging the criminal entry and beating of Ms. Gunderman as a basis for the first charge and the threats to Ms. Gunderman with a deadly weapon as the basis for the second charge. A second complaint was filed on March 3, 1986, charging appellant with attempted second-degree murder of Mr. Rone. Appellant was bound over to district court, and an information was filed containing all three charges. At the conclusion of a five-day trial held October 20 through 24, 1986, the jury returned a verdict of guilty on all three counts. Judgment and sentence were entered on February 9, 1987. Appellant was sentenced to not less than five years nor more than seven years, suspended, on the aggravated burglary charge; not less than three years nor more than five years on the aggravated assault and battery charge, with credit for fourteen days served off the minimum and maximum terms; and not less than twenty years nor more than twenty-one years, suspended, on the attempted second-degree murder charge.

## I

■ In his first issue, appellant argues that the district court abused its discretion by allowing Vernon Nix to testify for the State or by not providing another remedy, because Mr. Nix was in the courtroom during voir dire in violation of the court's sequestration order. We disagree.

Exclusion of witnesses is provided for by W.R.E. 615, which provides in relevant part:

> At the request of a party the court shall order witnesses excluded *so that they cannot hear the testimony of other witnesses,* and it may [issue] the order of its own motion.

(Emphasis added.) From its plain language, it is apparent that the rule contemplates sequestration only during the testimony of other witnesses. The rule is designed to "prevent the tailoring of evidence to conform to prior testimony and to assist the parties in detecting falsehoods and testimony which is less than candid." *Towner v. State,* 685 P.2d 45, 47 (Wyo.1984). *See also Pixley v. State,* 406 P.2d 662 (Wyo. 1965).

In this case, Mr. Nix was in the courtroom inadvertently and without the knowledge of either party. We agree with the trial court's assessment of the situation when, in denying appellant's motion to prohibit Mr. Nix's testimony, it stated:

> [I]n any event, I listened to the voir dire and I didn't hear anything that would give him even a hint of what the trial was going to be about. I thought both counsel conducted the voir dire in a very open ma[nn]er without regard to the facts of the case. I really don't see how he could have prejudiced himself by being present.

Even if we were to consider Mr. Nix's presence during voir dire a violation of the spirit of the rule, and it apparently was in violation of the court's order, we have previously stated that permitting witnesses to testify who have been in the courtroom in violation of a sequestration order is a matter addressed to the sound discretion of the court and that we would reverse only for an abuse of that discretion. *Towner,* 685 P.2d at 48; *Whiteley v. State,* 418 P.2d 164 (Wyo.1966). Here, there was no abuse of discretion, and the trial court properly allowed Mr. Nix to testify.

## II

Appellant's second issue requires us to examine the question of double jeopardy/merger within the context of multiple punishments in a single trial. Courts, including this Court, have struggled with this often troublesome area of the criminal law.[1] Recent decisions by the United States Supreme Court, however, and their

---

**1.** In *Albernaz v. United States,* 450 U.S. 333, 343, 101 S.Ct. 1137, 1144, 67 L.Ed.2d 275 (1981), Justice Rehnquist (now Chief Justice), writing for the majority, observed that decisional law in the area of double jeopardy "is a veritable Sargasso Sea which could not fail to challenge the most intrepid judicial navigator."

adoption and application by this Court have resolved much of the confusion surrounding this issue.

█ The prohibition against double jeopardy is found in both the United States[2] and Wyoming[3] Constitutions. In *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), the Supreme Court held that the Double Jeopardy Clause of the Fifth Amendment applies to the states through the Fourteenth Amendment. In *Vigil v. State,* 563 P.2d 1344, 1350 (Wyo. 1977), we stated that, although the respective double jeopardy provisions of the Wyoming and United States Constitutions are dissimilar in language, "they have the same meaning and are coextensive in application." *See also Birr v. State,* 744 P.2d 1117 (Wyo.1987). The double jeopardy prohibition affords three distinct protections to the accused. It prohibits a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense in a single trial. *Schultz v. State,* 751 P.2d 367, 369 (Wyo. 1988); *Birr,* 744 P.2d 1117; *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed. 2d 187 (1977). The third, or multiple punishment protection, is our concern in this case.

Appellant's contentions are essentially twofold. First, appellant argues that the State, in charging him with burglary, used the intent to commit an aggravated assault to elevate a criminal entry charge to burglary and, therefore, aggravated assault was an underlying felony to the burglary charge and conviction and the district court erred in not merging aggravated burglary and aggravated assault and battery. Second, although not as clearly presented, appellant seems to contend that the battery of Ms. Gunderman, employed by the State to elevate the charge of burglary to aggravated burglary, was part of the same transaction or same offense as the threatening of Ms. Gunderman with a knife, which

formed the basis for the aggravated assault and battery charge, and, therefore, again the charges should have merged. We disagree as to both contentions.

Compounding the difficulty in this case is the fact that Wyo.Stat. §§ 6–3–301(c) (aggravated burglary) and 6–2–502(a) (aggravated assault and battery) (1977) are each single offenses that can be violated in several different ways, with a substantial overlap in the manner in which the two statutes can be offended. A concern which we perceive as inherent in appellant's argument is that the State simply segmented two methods of violating either of the statutes and charged them separately under the two overlapping statutes. Thus, we must look at all the aggravating factors provided in the two statutes in order to evaluate appellant's double jeopardy claim.

Appellant was charged with aggravated burglary pursuant to Wyo.Stat. § 6–3–301(a) and (c)(ii) (1977), which encompasses one of the three aggravating factors in subsection (c) of the statute. Section 6–3–301(a) and (c) provides in pertinent part:

(a) A person is guilty of burglary if, without authority, he enters or remains in a building, occupied structure or vehicle, or separately secured or occupied portion thereof, *with intent to commit larceny or a felony therein.*

\* \* \* \* \* \*

(c) [A person is guilty of a]ggravated burglary \* \* \* if, in the course of committing the crime of burglary, the person:

(i) Is or becomes armed with or uses a deadly weapon or a simulated deadly weapon;

(ii) *Knowingly or recklessly inflicts bodily injury on anyone;* or

(iii) Attempts to inflict bodily injury on anyone.

(Emphasis added.) Aggravated assault and battery is defined in § 6–2–502(a) as

---

**2.** U.S. Const. amend. V provides in pertinent part: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb."

**3.** Wyo. Const. art. 1, § 11 states in part: "[N]or shall any person be twice put in jeopardy for the same offense."

follows (with emphasis added to paragraph (iii) under which appellant was charged):

(a) A person is guilty of aggravated assault and battery if he:

(i) Causes serious bodily injury to another intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;

(ii) Attempts to cause, or intentionally or knowingly causes bodily injury to another with a deadly weapon;

(iii) *Threatens to use a drawn deadly weapon on another* unless reasonably necessary in defense of his person, property or abode or to prevent serious bodily injury to another; or

(iv) Intentionally, knowingly or recklessly causes bodily injury to a woman whom he knows is pregnant.

(Emphasis added.)

■ As a first step in the multiple punishments analysis, we must determine whether there is a clear expression of legislative intent that aggravated burglary and aggravated assault and battery be punished cumulatively. This is so because, "[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no[ ] more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983). *See also Garrett v. United States*, 471 U.S. 773, 793, 105 S.Ct. 2407, 2418, 85 L.Ed.2d 764 (1985). " '[T]he question of what punishments are constitutionally permissible is not different from the question of what punishment[s] the Legislative Branch intended to be imposed.' " *Birr*, 744 P.2d at 1119 (quoting *Albernaz v. United States*, 450 U.S. 333, 344, 101 S.Ct. 1137, 1145, 67 L.Ed.2d 275 (1981)). Thus, we defer to clearly expressed legislative intent to impose multiple penalties for criminal conduct in a single trial. *Schultz*, 751 P.2d at 369; *Hunter*, 459 U.S. at 368–69, 103 S.Ct. at 679–80.

Therefore, with respect to appellant's argument that, in his case, aggravated bur-glary and aggravated assault and battery are of the same character, grow out of the same transaction, and are aspects of the same offense, it is clear that, even if appellant is correct in this contention, it simply does not matter if indeed the legislature intended cumulative punishments under the two statutes. Where a legislature specifically authorizes cumulative punishments under two statutes, a court's task of statutory construction is at an end, regardless if those two statutes prohibit the same conduct, and the trial court may impose cumulative punishments under the two statutes at the same trial. *Id.* In the instant case, however, neither of the statutes in question expressly authorizes cumulative punishments where both statutes have been violated in a single criminal episode. Appellant thus surmounts the first hurdle in his double jeopardy challenge.

We must next determine if the two statutes address the same conduct because, where two statutes proscribe the same offense, they are construed to not authorize cumulative punishments—absent clear legislative intent to the contrary. *Id.*, 459 U.S. at 366, 103 S.Ct. at 678; *Whalen v. United States*, 445 U.S. 684, 692, 100 S.Ct. 1432, 1438, 63 L.Ed.2d 715 (1980). This rule of construction emanates from the assumption that the legislature does not ordinarily intend to punish the same offense under two different statutes. *Hunter*, 459 U.S. at 366, 103 S.Ct. at 678; *Whalen*, 445 U.S. at 691–92, 100 S.Ct. at 1437–38. This is the underlying assumption of the *Blockburger*[4] test, which will be discussed momentarily. Conversely, when the legislature creates two distinct offenses, the presumption is that it intends to allow cumulative punishments. *Birr*, 744 P.2d at 1122; *Garrett*, 471 U.S. at 793, 105 S.Ct. at 2418.

■ In determining whether the legislature intended the same or separate offenses, we first look to the plain language of the statutes, giving the words their plain and ordinary meaning. *Schultz*, 751 P.2d at 370. In so doing, we can dispose of appellant's contention that aggravated as-

---

4. *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

sault and battery was the underlying felony to burglary, requiring merger. A simple reading of the statutes demonstrates that burglary requires an unlawful entry with the intent to commit any felony. The felony need not be committed. Thus, aggravated assault and battery was not an underlying felony to the burglary, and appellant could have been convicted of burglary absent the assault, as long as the requisite intent was shown.

The question of whether the aggravated burglary and aggravated assault and battery statutes were intended to proscribe the same offense cannot be so easily resolved. Looking at the language of § 6–2–502(a) and comparing it with that of § 6–3–301(c) does not provide a conclusive answer. Each statute can be violated in several ways, some of which overlap. For example, a knowing and intentional infliction of bodily injury may form the basis for a conviction of aggravated assault and battery and for a conviction of aggravated burglary—if the elements of burglary are present. Sections 6–2–502(a)(i) and 6–3–301(a) and (c)(ii). Similarly, an attempt to cause injury to another with a weapon constitutes an aggravated assault and battery pursuant to § 6–2–502(a)(ii), and yet it also would be sufficient to elevate a burglary to aggravated burglary under § 6–3–301(a) and (c)(iii). Thus, the plain language of the statutes is not decisive in this instance.

Where, as here, the legislative intent is not clear from the face of the statute, that intent is inferred from legislative history, the purpose of the statute, and the *Block-burger* test. *Howard v. State*, 762 P.2d 28, 32 (Wyo.1988). The dearth of legislative history in Wyoming generally renders inquiry into that domain to be of limited value. We note, however, that aggravated assault and battery has, in various forms, been statutorily proscribed since statehood. 1890 Wyo.Laws, ch. 73, § 22. Aggravated burglary, as a more serious form of burglary and incorporating factors similar to the current enactment, was not grafted onto the burglary statute until 1957. 1957 Wyo.

Sess.Laws, ch. 185, § 1; Wyo.Stat. § 6–129 (1957). Although we assume the legislature, in enacting the aggravated burglary statute, was aware of the aggravated assault and battery statute, this does no more than bolster the assumption that the legislature does not ordinarily intend to punish the same offense under two separate statutes. *Hunter*, 459 U.S. at 366, 103 S.Ct. at 678.

An examination of the purposes of the two statutes is also inconclusive as to legislative intent. Where independent but overlapping statutes are directed to separate evils, cumulative punishments are intended. *Birr*, 744 P.2d at 1121; *Albernaz*, 450 U.S. at 343, 101 S.Ct. at 1144. Although the prohibition against burglary is clearly intended to protect property and the security of the home, the additional factors which encompass aggravated burglary are similar to the aggravated assault and battery provisions in that they generally provide punishment for the infliction of, the attempt to inflict, or the threat of inflicting bodily injury. It is not clear, therefore, whether or not the two statutes are directed to separate evils.

At this point, consequently, we arrive at the *Blockburger* test as a tool for discerning legislative intent.[5] The *Blockburger* test is a rule of statutory construction as opposed to a constitutional requirement. *Birr*, 744 P.2d at 1120; *Hunter*, 459 U.S. at 367, 103 S.Ct. at 678. *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), held that:

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not.

■ Application of the above test to the overlapping provisions of §§ 6–2–502 and 6–3–301 convinces us that these statutes do

---

5. We reiterate that the *Blockburger* rule is not controlling where legislative intent is clear from the face of the statute or from the legislative history. *Howard*, 762 P.2d at 32; *Schultz*, 751 P.2d at 370; *Garrett*, 471 U.S. at 779, 105 S.Ct. at 2411.

not proscribe the same offense or conduct. Aggravated burglary requires, *inter alia,* (1) proof of unlawful entry with (2) the intent to commit larceny or a felony therein. Neither of these facts needs to be proved in connection with aggravated assault and battery. Thus, one can commit aggravated assault and battery without committing aggravated burglary. In order to determine if the converse is true (i.e., that one can commit aggravated burglary without committing aggravated assault and battery), we must look at each aggravating circumstance in the aggravated burglary statute and compare it with its similar counterpart in the aggravated assault and battery statute. Under § 6–3–301(c)(i), an aggravated burglary occurs when the burglar is simply armed or becomes armed with a deadly weapon. Conviction of an aggravated assault and battery pursuant to § 6–2–502(a), however, requires proof of the additional facts of either an attempt to cause or actually causing bodily injury with the weapon (paragraph (ii)) or a threat to use the weapon (paragraph (iii)). Section 6–3–301(c)(ii) provides that an aggravated burglary also occurs when the burglar knowingly or recklessly inflicts bodily injury on anyone. Under § 6–2–502(a), however, in addition to a knowing and reckless infliction of injury, an aggravated assault and battery requires proof of circumstances manifesting extreme indifference to the value of life (paragraph (i)), use of a weapon (paragraph (ii)), or injury to a pregnant woman (paragraph (iv)). Finally, § 6–3–301(c)(iii) provides that an aggravated burglary occurs when the burglar attempts to inflict bodily injury on anyone. Section 6–2–502(a)(ii) requires, in addition to the attempt to inflict bodily injury, proof that the attempt was made with a deadly weapon. Therefore, in each instance, aggravated assault and battery requires proof of additional facts not required to be proved under each method by which aggravated burglary is established, and each manner of committing aggravated burglary under § 6–3–301(c) can be accomplished without committing aggravated assault and battery. The two statutes satisfy the *Blockburger* test, and we conclude that separate offenses and punishments were intended.

Although the preceding is dispositive as to appellant's double jeopardy claim, we also note that the same result is achieved, albeit much more simply, when we apply the "different evidence" test, a derivative of the *Blockburger* rule.[6] In *State v. Carter,* 714 P.2d 1217, 1220 (Wyo.1986), we stated that, "where there is separate evidence of the two offenses, the offenses cannot be said to have merged." In the instant case, the evidence supporting the aggravating burglary was the beating of Ms. Gunderman with the telephone—the infliction of bodily injury. On the other hand, the evidence supporting the aggravated assault consisted of appellant's threat to Ms. Gunderman with a knife. Clearly, there was separate evidence of the two offenses and, under the "different evidence" test, the offenses did not merge. Appellant's double jeopardy claim fails, therefore, under either a statutory or an evidence based application of *Blockburger.*

### III

In his final issue, appellant contends that the introduction of prior bad acts evidence at trial violated W.R.E. 404(b) and deprived appellant of a fair trial. The failure of appellant's trial counsel to object to this evidence, however, requires that appellant

---

**6.** The "different evidence" test, also known as the "same evidence" test, was developed in cases concerning successive prosecutions. *Whalen,* 445 U.S. at 705, 100 S.Ct. at 1444 (Rehnquist, J., dissenting). Because the test requires reference to the information and the facts of the case, its continued vitality in the multiple punishment context has been called into question by recent decisions of the Supreme Court and of this Court. *See Albernaz,* 450 U.S. at 338, 101 S.Ct. at 1142 (the Court's application of *Blockburger* focuses on the statutory elements of the offense—the test is satisfied if each requires proof of a fact the other does not, notwithstanding a substantial overlap in the proof offered to establish the crimes); *Howard,* 762 P.2d at 31 (the test is the statutory definition, not the proof offered in a particular case); and *Birr,* 744 P.2d at 1120 n. 7 (it would seem that the *Blockburger* test should be applied to the statutes involved and not to the particular facts).

establish plain error to warrant reversal. We conclude that appellant has not demonstrated plain error.

The evidence received at trial to which appellant now objects consisted primarily of testimony regarding previous instances of appellant's abusive treatment of Ms. Gunderman. The testimony on this point was fairly extensive. Ms. Gunderman's son, Robert Taylor, testified that appellant had assaulted Ms. Gunderman and that he, Taylor, had seen bruises on his mother. Ms. Gunderman testified to several prior instances of appellant's violence toward her, including his striking her, kicking her out of the house, administering a beating to her in the front yard of their home, breaking out her car window and jerking her out of her car, and threatening to kill her. In addition, the prosecutor referred to this testimony in both his opening and closing statements. The only objection raised to any of this testimony and argument was a relevancy objection to Ms. Gunderman's testimony that she constantly carried extra clothing in her car because of the repeated beatings and ejections from the house. This objection was overruled, and similar testimony was thereafter elicited without objection.

W.R.E. 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

We adhere to the general rule that evidence of other crimes, wrongs, or acts is normally not admissible in the trial of a criminal case. *Noetzelmann v. State,* 721 P.2d 579, 582 (Wyo.1986); *Bishop v. State,* 687 P.2d 242 (Wyo.1984), *cert. denied* 469 U.S. 1219, 105 S.Ct. 1203, 84 L.Ed.2d 345 (1985). As indicated by the rule, however, evidence of prior acts may be admitted for a variety of purposes, including the establishment of a course of conduct. *Noetzel-*

*mann,* 721 P.2d at 582; *Evans v. State,* 655 P.2d 1214 (Wyo.1982).

When an issue was not raised at trial, the appellant must establish that the alleged error was plain error. *Lozano v. State,* 751 P.2d 1326, 1327 (Wyo.1988); *Gresham v. State,* 708 P.2d 49 (Wyo.1985). Failure to object at trial constitutes a waiver of the alleged error unless the error rises to the level of plain error. *Bradley v. State,* 635 P.2d 1161, 1163–64 (Wyo.1981); *Leeper v. State,* 589 P.2d 379 (Wyo.1979). Appellant bears the burden of establishing plain error, and the rule is applied sparingly and only in special circumstances. *Gresham,* 708 P.2d at 55; *Cutbirth v. State,* 663 P.2d 888 (Wyo.1983). This Court applies a three-part test to determine if plain error has occurred. First, the record must clearly show the incidents alleged as plain error. Second, the appellant must demonstrate the violation of a clear and unequivocal rule of law. Finally, it must be shown that the appellant was materially prejudiced—that a substantial right of the appellant was adversely affected. *Lozano,* 751 P.2d at 1327; *Gresham,* 708 P.2d 49.

Here, the record plainly shows the incidents alleged as plain error. The record contains considerable testimony regarding appellant's prior abusiveness. Appellant's plain error contention, however, cannot surmount the requirement of demonstrating the transgression of a clear and unequivocal rule of law. The decisions of this Court have admittedly not established the exact parameters of W.R.E. 404(b). Of necessity, the decisions often rest upon the circumstances of each case, and the limits to the exceptions under W.R.E. 404(b) remain unsettled.

A sampling of recent decisions of this Court concerning W.R.E. 404(b) readily confirms the above observations. In *Crozier v. State,* 723 P.2d 42, 49 (Wyo.1986), we applied a " 'course of conduct' exception" to the rule, limiting the exception in that case to conduct within the same general transaction as the crime charged. The course of conduct exception was expanded in *Scadden v. State,* 732 P.2d 1036 (Wyo. 1987), to include prior acts remote in time

from the crime charged. The admission of evidence of prior instances of incest remote from the incident charged was upheld by a divided Court in *Brown v. State*, 736 P.2d 1110 (Wyo.1987), upon the basis that the testimony was relevant to motive and common design. *See also Makinen v. State*, 737 P.2d 345 (Wyo.1987). As is apparent, we have developed a rather liberal attitude toward admitting evidence of other crimes, wrongs, or acts. *Miller v. State*, 755 P.2d 855 (Wyo.1988); *Marker v. State*, 748 P.2d 295 (Wyo.1988). In *Miller*, we noted several of the above cases and commented that, as far as further extension or expansion of the admissibility of other crimes, wrongs, or acts, we had gone about as far as we want to go, "at least in this case." 755 P.2d at 862. In *Brown*, the specially concurring opinion observed:

> The difficulty I have is in finding a *clear rule of law* that will tell us in the future when bad-act evidence * * * is admissible and when it is not admissible.

736 P.2d at 1116 (Cardine, J., specially concurring) (emphasis added). More emphatically, in the dissenting opinion in that case, it was stated: "This case has just struck the final death blow to Rule 404, W.R.E., and all that remains is the spirit of the rule." *Id.* at 1128 (Macy, J., dissenting).

The State argues that the evidence in this case of appellant's prior abusive treatment of Ms. Gunderman was admissible under the course of conduct exception. This assertion is questionable. What is not in doubt, however, as illustrated by the above cases, is that admission of this evidence did not transgress a clear and unequivocal rule of law. Under the circumstances, therefore, it was essential that an objection be made at trial, thereby giving the district court an opportunity to rule on admissibility and providing an adequate record by which we could review the reasoning of the district court. *See Bradley*, 635 P.2d 1161. Appellant has failed to establish plain error, and we need not reach the question of material prejudice.

AFFIRMED.

URBIGKIT, J., files a dissenting opinion.

URBIGKIT, Justice, dissenting.

This triangle involved ex-husband/defendant/appellant Lauthern, his ex-wife/sometimes present housemate, Katherine Gunderman, and her sometimes boyfriend, Alvin Rone. Rone and Lauthern were hostile for more reasons than their separate complicating romantic interests in Gunderman. Events came to a climax when Lauthern, fretting all night that Gunderman had not come home, located her with Rone the next morning at her separate residence. Cultivating emotion into high anger, Lauthern broke into the house where Gunderman and the still intoxicated Rone had spent the late evening and early morning.

It was from the fracas that resulted that Lauthern was charged with and sentenced after conviction for attempted second degree murder of Rone, aggravated assault on Gunderman and aggravated burglary of the residence where the two people were located. I dissent from the majority's affirmation of the convictions for both aggravated assault and aggravated burglary. In my opinion, the trial court accurately assessed the unitary nature of the case in its sentence by entering penitentiary confinement of not less than three nor more than five years for the aggravated assault and suspended sentences for both the conviction of aggravated burglary and attempted second degree murder, with all sentences to run concurrently for this sixty-two-year-old man.

Initially, I could dispose of this appellate issue—questioning the duplicity or double jeopardy in separate charges for the assault as well as the burglary—on a concurrent sentence doctrine. *Driskill v. State*, 761 P.2d 980 (Wyo.1988); Emanuel, *The Concurrent Sentence Doctrine Dies a Quiet Death—Or Are the Reports Greatly Exaggerated?*, 16 Fla.St.U.L.Rev. 269 (1988). Unfortunately, the majority chose to justify the overlapping and duplicitous charges with which result I presently dissent because of possible future precedent in a case where the issue really matters to the convicted individual.

Applying the evidence with a construction most favorable to prosecution, Lauthern broke into the house to inflict his anger forcefully and physically upon Rone, and Gunderman got in his way in the process. Considering that possibly a brick and a telephone were the instruments of infliction of injury on the love-interest competitor, the parameters of attempted second decree murder may be stretched to the limits of proof and interpretation, but that uncertainty is not an issue contested by appeal.

Obviously, the entry was a factual constituent of the resulting mayhem. The assault on Gunderman was the aggravation factor within which aggravated burglary could be extruded. I have no great difficulty with the citations of the various cases by the majority or disagreement in relevant principles as we journey from the historical Wyoming law of the transactional limitation for double jeopardy through *Carter v. State*, 714 P.2d 1217 (Wyo.1986) to *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) and the confused and complicating cases in numerous number from the United States Supreme Court, federal courts and state tribunals that have since followed in review of the double jeopardy and duplicitous charging analyses. Since *Carter*, 714 P.2d 1217, this court has not been spared as the issues have been more recently visited in *Schultz v. State*, 751 P.2d 367 (Wyo.1988) and *Birr v. State*, 744 P.2d 1117 (Wyo.1987). See Note, *Criminal Procedure—Consecutive Sentences for Felony Murder and the Underlying Felony: Double Jeopardy or Legislative Intent? Birr v. State, 744 P.2d 1117 (Wyo.1987)*, XXIII Land & Water L.Rev. 603 (1988).

I find the general rules improperly applied here which also occurred in *Birr*, 744 P.2d 1117, in that we extrapolate a lesser included offense to create a separate crime. Clearly, the constitutional issue raised by the lesser included offense doctrine involves the Fifth Amendment, that no person shall be subject for the same offense to be twice put in jeopardy of life and limb. This provision protects against both multiple prosecution and multiple punishments for the same offense. See *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664-65 (1969), as recited and substantiated in *State v. Jeffries*, 430 N.W.2d 728, 734 (Iowa 1988).

In this case, in the context of the angered ex-husband/boyfriend, the assault was the aggravation for the aggravated burglary conviction as the constituent felony to be differentiated from whatever property damage offense might be committed by forceful and unacceptable entry. My special concurrence in *Schultz*, 751 P.2d 367 and dissent in *Birr*, 744 P.2d 1117 define a present concern about a result that essentially extrapolates the lesser included to create a separate crime which is contrary to both the general law and the interpretative posture of *Blockburger*, 284 U.S. 299, 52 S.Ct. 180 to require a separate element for each charge.

In excellent analysis and carefully defined text, the Iowa Supreme Court in *Jeffries*, 430 N.W.2d 728 defines and illuminates the factors and function of the lesser included offense doctrine. That case probably provides the most academically considered and comprehensively enumerated dissertation on the subject which can be found in any recent case review. Without extended reference, it would realistically appear that Wyoming has followed the decisional approach of Iowa in acceptance of the common law or strict statutory elements approach. Wyoming provides by W.R.Cr.P. 32(c):

The defendant may be found guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein if the attempt is an offense.

See *Goodwine v. State*, 764 P.2d 680 (Wyo. 1988); *Simonds v. State*, 762 P.2d 1189 (Wyo.1988); *Driskill*, 761 P.2d 980; and *Griego v. State*, 761 P.2d 973 (Wyo.1988). In this application, at least generally by definition, a lesser included offense is enveloped within the confines of the principal offense so that some contended, unproven fact, such as intent, justifies diminution of penalty to the less severe charge.

Consequently, by any consistent application of adopted legal principles, the lesser included offense within the Blockburger thesis cannot be a separate offense since there cannot be separate elements for *each* of the two charges.

Further, in *Jeffries*, 430 N.W.2d at 734–35, we perceive:

The lesser-included offense doctrine comes into play in determining what is a "same offense" for double-jeopardy purposes. *Ex parte Nielsen*, 131 U.S. 176, 188, 9 S.Ct. 672, 676, 33 L.Ed. 118, 122 (1889). According to Nielsen, if an offense is a lesser-included one of the offense charged, a conviction or acquittal of the charged offense bars a subsequent prosecution of the lesser offense. Id. Further, a conviction or acquittal of the lesser-included offense bars a subsequent prosecution of the greater offense.

In *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932), the Supreme Court laid down the following test for determining the "same offense" for double-jeopardy purposes: "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not." This test parallels the strict statutory-elements approach. *Ettinger*, 50 Brooklyn L.Rev. at 218.

In factual recitation where I depart from the majority, is in their analysis with regard to the differentiated elements of aggravated burglary as requiring "inter alia, (1) proof of unlawful entry with (2) the intent to commit * * * a felony therein," where the assault was the felony since clearly Lauthern was vengeful but not larcenous. Obviously, a person can commit burglary without committing assault, but in this case, the activity constituent within the burglary and aggravated burglary charge was the indispensable lesser included assault and aggravated assault conduct.

It is in the essential nature of serious criminal conduct that the proscribed activity or course of felonious behavior can be expected to invade more than one criminal statute or at least to invoke a more serious charge for which, with some factor deleted, a lesser included offense will be involved. For this reason, the cases on this dual subject of double jeopardy and lesser included offense are vastly variant in character and numerous in number beyond any reasonable review or citation. However, somewhat immediately similar in nature is *Ramsey v. State*, 183 Ga.App. 344, 358 S.E.2d 902 (1987), invoking inquiry of whether aggravated assault would be the lesser offense of armed robbery. In finding that the assaultive activity constituted the effort to carry the armed robbery into effect, that court determined that the conviction for aggravated assault merged into the armed robbery and consequently the aggravated assault conviction had to be set aside. See *Hambrick v. State*, 256 Ga. 148, 344 S.E.2d 639 (1986); Koenig, *The Many–Headed Hydra of Lesser Included Offenses: A Herculean Task for the Michigan Courts*, 1975–76 Det.C.L.Rev. 41, 68 (1975); and Blair, *Constitutional Limitations of the Lesser Included Offense Doctrine* [Double Jeopardy], 21 Am.Crim. L.Rev. 445, 455 (1984). "Clearly, then, the impact of the standard chosen to identify a lesser included offense is that by implication it serves to delineate the scope of the double jeopardy protection afforded to the defendant." Ettinger, *In Search of a Reasoned Approach to the Lesser Included Offense*, 50 Brooklyn L.Rev. 191, 219 (1984). The transgressions pursued by Lauthern in his unprovoked entry and assault are adequately served by one conviction in addition to the separate offense of attempted second degree murder of Rone. *State v. Wood*, 208 Conn. 125, 545 A.2d 1026, cert. denied —— U.S. ——, 109 S.Ct. 235, 102 L.Ed.2d 225 (1988); *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed. 2d 187 (1977); *Pearce*, 395 U.S. 711, 89 S.Ct. 2072; Note, *A Closer Look at the Supreme Court and the Double Jeopardy Clause*, 49 Ohio St.L.J. 799 (1988).

Consequently, I respectfully dissent from a decision affirming three felonies which

resulted from Lauthern's anger driven conduct.